# Richmond

## CHERRYDALE CEMENT BLOCK COMPANY v. COUNTY BOARD OF ARLINGTON COUNTY, VIRGINIA.

December 7, 1942.

Record No. 2558.

Present, All the Justices.

The opinion states the case.

*Frank L. Ball* and *John C. McCarthy*, for the appellant.

*Jesse, Phillips, Klinge & Kendrick*, for the appellee.

HOLT, J., delivered the opinion of the court.

■ Counties under conditions named may enact and enforce zoning ordinances. Michie's Code, 1942, sec. 2880k, and statutes noted.

Arlington county has established such zones.

The County Board of Arlington County in its bill charges that the Cherrydale Cement Block Company, a corporation, to an extent there named, has violated that ordinance and has put up a building without permission in a residential zone which properly could only have been built in an industrial zone. The defendant denies that it has violated in this respect any ordinance and contends, for reasons relied upon, that the ordinance itself is unreasonable.

Mr. Charles A. Toone, who is president and majority stockholder of the Cement Company, wished to go into the cement block business and to locate his factory at some point convenient to transportation facilities. A location adjoining the Washington & Old Dominion Railway Company met those requirements. A real estate agent brought to his attention such a lot, owned by Mrs. Bessie L. Miller, and through him he got in touch with her. He was anxious to avoid any difficulties which might arise out of the zoning ordinance and inquired of this agent if all this property was zoned for light industrial purposes; that broker, Mr. Sutton, said: "I thought it did." Mr. Toone was still not satisfied, as appears from this excerpt of his testimony:

"Q. For your information, the application for rezoning was signed and sworn to on the 6th of March. The settlement was made on that date and the deed conveying the property to the company was recorded on the following day. Could you enlighten us why Mrs. Miller applied for light industrial on the same day she sold to you and it was settled for? A. I can tell you the history of that very clearly. When Mr. W. M. Sutton first came to me and offered to sell the property, he wanted to sell me 3 acres of real estate. He said, 'You need more land.' I said, 'I know I do but I have no money to buy it with.' He said, 'This is a nice piece of land and it is zoned and a little money will fix it up.' I told him I would think it over and I did. Several weeks afterwards, I saw Mr. Sutton and told him I would go look at it and at that time, I asked Mr. Sutton if he was certain it was zoned and he said Mrs. Miller said so. I said that otherwise I would not want to be bothered with it as I had too many headaches without looking for zoning problems. He insisted it was zoned, having been told by the party that turned the property over to him, so I asked Mr. Douglas about the property and he said it was zoned and it wasn't until the time of the examination and searching of the title by Mr. Simmonds, when he ran that title down, which was around the same date we were to settle, and he called and asked me if I knew whether the property was zoned and I said it was. He said,

'The records don't show it.' I said, 'Then it's up to Mrs. Miller to get it zoned.' Mr. Simmonds said he would take care of it and I left for Florida. Then he wrote me in Florida; and that was the first thing I knew it was not zoned.

"Q. At that time, Mr. Simmonds was representing you, when he told you the records did not show it was zoned? A. Yes, he was representing the company, that is correct.

"Q. Thereafter, when the application came before the Board of Zoning Appeals, you were represented by Senator Ball, were you not? A. Yes, I think I was."

Mrs. Miller did undertake to clear up what threatened to be a source of trouble, as is shown by this extract from the minutes of a meeting of the County Board of Arlington County held on April 13, 1940:

"IN RE: REQUEST FOR REZONING — BESSIE L. MILLER — Z-94-40-1.

"In the request of Bessie L. Miller for rezoning from Residential 'A' to Light Industrial Zone of two acres, more or less, fully described below and located in the 1600 block of North Nelson Street, extended, the Board of Zoning Appeals recommended that the request be denied."

At that meeting Mr. Ball, who represented Mr. Toone, and Mr. Toone himself were both present. Mr. Toone "explained the use he wished to make of this tract of land if rezoned." After hearing evidence "the request of Bessie L. Miller for rezoning" was, on motion of Mr. Campbell, unanimously denied.

After this, the Cement Company, taking chances, went ahead and built a drying shed, charged to be obnoxious. The plant itself is in an industrial zone, and as to it no complaint is made; but north of it and across a portion of its property runs a line which, according to contention of the plaintiff, separates the industrial zone from a zone set apart for residential purposes, and it is there that the shed was built.

Just where the line runs which separates the industrial zone from that set apart for residential purposes is not defined with desirable accuracy. Its location is a question of fact and to establish it much testimony has been taken, some

given by expert surveyors. Many maps were also introduced in evidence, and much of this testimony makes constant reference to them and without them it is unintelligible. Their reproduction is not feasible, and, if reproduced and reduced to sizes within limits, parts of them would probably not be decipherable. It is sufficient to say that we have examined them with care and read the testimony of witnesses in connection with them. We think this testimony supports the finding of the trial court and are strengthened in this by these conclusions: The burden is on one who assails a decree to show error. Here, without the intervention of a jury, the Judge heard evidence. He also went upon the disputed premises and saw for himself the situation there.

The defendant contends that, even if the line runs where plaintiff contends it does run, the zoning here is unreasonable —that the land on which its shed is built is not suited for residential purposes.

In the plant itself there are two of these block-making machines. One of them makes from two to three thousand blocks a day; the other is smaller and probably makes less. These blocks are hauled into this drying shed, and after sufficient time has elapsed for them to set, they are taken out and replaced by others.

On the question as to whether or not this zoning is reasonable much evidence was taken. It supports the finding of the court below.

The development in Arlington county has been extraordinarily rapid. In a short time that county bids fair to be entirely urban, and for that reason it should be orderly and not haphazard. We should look with sympathy upon the efforts of the county made to this end. It is easier to prevent mistakes than to correct them, and it is never possible to say just where a line should run, for conditions on either side of it are seldom radical. The judgment of the authorities must be plainly wrong before it should be overborne.

No permit to build this shed was ever asked for or given, and it is not claimed that it should be built in a district set apart for and suitable to residential development.

We have had occasion to examine this subject in some detail in *West Brothers Brick Co.* v. *Alexandria,* 169 Va. 27,1, 192 S. E. 881, and there said:

"The enactment of zoning ordinances and cases which test them are all within the recollection of most of us. General rules applicable thereto are now well settled. They must not be wholly unreasonable, but they are presumed to be valid and to have been promulgated by those familiar with local conditions. Vested interests will not defeat them, and of course constitutional rights are not to be measured in terms of money. That, however, is a consideration to be remembered. Great financial losses should not be inflicted where benefits to others are negligible, but public welfare and public convenience do control and are in themselves terms constantly adjusted to meet new conditions. Upon those who would set aside such ordinances rests a heavy burden of proof. They stand when their validity is debatable."

The decree appealed from should be affirmed, and it is so ordered. This cause is remanded to the end that reasonable time for the removal of this shed be given and for the further purpose that the lower court may see that its order is complied with.

*Affirmed and remanded.*