## 𝔖taunton

COUNTY OF FAIRFAX, ET AL. v. L. W. PARKER.

September 3, 1947.

Record No. 3257.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Hugh B. Marsh* and *Albert V. Bryan*, for the appellants.

*Charles Pickett*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On February 5, 1941, the Board of Supervisors of Fairfax county, pursuant to the General County Zoning Act of 1938 (Acts 1938, ch. 415, p. 777, Michie's Code of 1942,

section 2880mm *ff.*),[1] adopted a comprehensive zoning ordinance which became effective on March 1, 1941.

By the terms of the ordinance the entire area of the county, consisting of 417 square miles, was divided into seven districts, denominated: "Agricultural Districts;" "Rural Residence Districts;" "Suburban Residence Districts;" "Urban Residence Districts;" "Rural Business Districts;" "General Business Districts;" "Industrial Districts." The location and boundaries of each district were shown on the zoning map attached to and made a part of the ordinance.

After the effective date of the ordinance, L. W. Parker, the appellee, acquired an unimproved lot, containing .736 of an acre, situated on the northerly side of the Leesburg Pike, just west of Tyson's Corner. This lot is located in that area of the county which is zoned and classified in the ordinance as a "suburban Residence District." The uses permitted in such a district are thus defined in the ordinance:

[1] Section 1 provides: "For the purpose of promoting health, safety, order, prosperity, the conservation of natural resources, and the general welfare, the board of supervisors or other governing body of any county is hereby empowered to regulate, by ordinance, in the unincorporated portion of the county, the locations of those areas which may be used as places of residence or in which agriculture, forestry, trade, industry, or other specific uses may be conducted, * * * ." (Michie's Code of 1942, section 2880mm.)

Section 2 authorizes the governing body of the county to "divide the county into districts of such number, shape and area as it may deem best suited to carry out the purposes of this act, and within each such district all regulations established as provided in section one of this act shall be uniform, but the regulations in one district may differ from those in other districts." (Michie's Code of 1942, section 2880nn.)

Section 3 specifies the procedure to be followed in adopting the ordinance. This includes the preparation of a tentative zoning plan by the county planning commission (appointed by the governing body of the county, pursuant to Acts of 1936, ch. 427, p. 1018, Michie's Code of 1942, section 2773(80) *ff.*); a public hearing by the commission on the proposed zoning plan; a report by the commission to the county governing board of the tentative plan, including the text of the ordinance, zoning maps, etc.; a public hearing by the county governing body on the proposed plan recommended by the commission, and the adoption of the ordinance. (Michie's Code of 1942, section 2880oo.)

Section 4 provides how the zoning ordinance, once adopted, may be amended. (Michie's Code of 1942, section 2880pp.)

"A. *Use Regulations:* In a Suburban Residence District no building or structure shall be erected, altered, or used, and no land shall be used unless otherwise provided in this ordinance except for one or more of the following uses:

"1. Any use permitted in the Rural Residence District and subject to the same condition in each case as set forth in Section IV, A."

A "Rural Residence District," embraced by the reference and defined in Section IV, A, is subject to the regulation that "no building or structure shall be erected, altered, or used, and no land shall be used unless otherwise provided in this ordinance, except for one or more of the following uses:"

Then follow fifteen classes of permitted uses, including "single family detached dwelling," "customary home occupations," "private garage," "private stable," "private summer cottages," "truck gardens," "farming, dairy farming, livestock and poultry raising," "tourists homes," "churches, parish houses and Sunday Schools," "public and parochial schools," "public and private parks."

Section 5 provides that the zoning ordinance "shall not prohibit the continuance of the use of any land, building or structure for the purpose for which such land, building or structure *are* used at the time such ordinance or ordinances take effect, but the alteration of, or addition to, any existing building or structure for the purpose of carrying on any prohibited use within the district may be prohibited." (Michie's Code of 1942, section 2880qq.)

Section 7 authorizes the governing body of the county to appoint a county board of zoning appeals to hear "appeals from decisions of any administrative officer in the enforcement of the zoning ordinance, to special exceptions or other special questions for which the zoning ordinance provides, and to variances from the strict application of the zoning regulations." Appeals from the decisions of the county board of zoning appeals to the board of supervisors or other governing county body is provided for. (Michie's Code of 1942, section 2880ss.)

Section 10 preserves unimpaired the provisions of the Special County Zoning Act of 1927 (Acts 1927, ch. 15, p. 26, as amended, Michie's Code of 1942, section 2880k *ff.*). (Michie's Code of 1942, section 2880vv.)

Section 11 provides that the act "shall be liberally construed to the end that the health, safety, order, prosperity, conservation of natural resources, and general welfare shall be furthered." (Michie's Code of 1942, section 2880ww.)

Except as stated, the list of permitted uses does not include a business or commercial use.

On or about January 1, 1946, Parker, the appellee, began to use his lot as a junk yard or "dumping ground" for brokendown motor vehicles, motor vehicle parts and accessories. Notwithstanding the admonition and protest of the proper authorities of the county, he declined to discontinue such use of the land.

Thereupon the county and the Board of Supervisors filed their bill in the court below, alleging the facts which we have detailed. It was further alleged that the use to which Parker was putting the lot was in violation of the terms of the ordinance. In substance, the prayer of the bill was that the defendant be enjoined and restrained from the further use of the lot in contravention of the provisions of the ordinance.

By a demurrer Parker, the defendant, challenged the validity of the ordinance. He asserted that it was unconstitutional and void; that it deprived him of his property without due process of law, in violation of the Constitution of Virginia, section 11, and the Fourteenth Amendment of the Constitution of the United States; that similarly it deprived "all other landowners in the county of Fairfax" of their properties without due process of law; and that the method in which the Board of Supervisors had divided the county into zones was arbitrary and capricious and in no way promoted the health, safety, order, prosperity, and general welfare of the citizens and property owners of the county.

Moreover, the demurrant said, the ordinance exceeded the power granted to the Board of Supervisors by the General County Zoning Act of 1938 (Acts 1938, ch. 415, p. 777, *supra*).

The lower court entered a decree sustaining the demurrer and dismissing the bill, and from this decree the county and the Board of Supervisors have appealed.

Much space in the brief of the appellee is devoted to criticisms of the ordinance with which we are not now

concerned. These denunciations range from the lack of need for the adoption of any zoning ordinance by the county authorities, to the unreasonableness of various restrictions applicable to the respective districts therein.

Whether the entire area of the county should have been zoned is a matter which the General Assembly, through the enabling act, has delegated to the local legislative body,[2] the County Board of Supervisors. It is a legislative matter with which we are not concerned. *Zahn* v. *Board of Public Works*, 274 U. S. 325, 328, 47 S. Ct. 594, 71 L. Ed. 1074; *Standard Oil Co.* v. *Marysville*, 279 U. S. 582, 584, 49 S. Ct. 430, 73 L. Ed. 856.

While the reasonableness of the restrictions imposed in the several districts is subject to judicial review, yet under familiar principles of constitutional law the appellee is concerned only with those which affect his rights. It does not lie in his mouth to say, nor will he be heard to complain, that the rights of others are adversely affected by the provisions of the ordinance. *Gorieb* v. *Fox*, 274 U. S. 603, 606, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210. See also, *Grosso* v. *Commonwealth*, 177 Va. 830, 839, 13 S. E. (2d) 285, 288, and cases there cited. Hence, our present inquiry is limited to whether this ordinance trespasses on the rights of the appellee.

The benefits of proper zoning laws are everywhere recognized. We need not stop to detail them. Neither is it necessary that we restate the principles governing the validity of such laws. Suffice it to say that if reasonable they are construed to be a lawful exercise of the State's police power. If their reasonableness is fairly debatable, the legislative judgment stands. For a discussion of the underlying principles see *Euclid* v. *Ambler Realty Co.*, 272 U. S.

[2] According to the records of the Virginia State Planning Board, as of February 15, 1947, the counties of Amherst, Arlington, Chesterfield, Elizabeth City, Fairfax, Henrico, Loudoun, Norfolk and Roanoke, under the authority either of the General County Zoning Act of 1938, *supra*, or the Special County Zoning Act of 1927, *supra*, have enacted zoning ordinances.

365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; *West Bros. Brick Co.* v. *Alexandria*, 169 Va. 271, 192 S. E. 881.[3]

In each of the last-named cases the right of the local legislative body to exclude an industrial use of land from an area which had been zoned for residential purposes was sustained. Similarly, in the case now before us the effect of the ordinance is to exclude an industrial use, such as a junk yard, from a district zoned for suburban residence use.

There is no claim that such exclusion of use is fundamentally improper. That it is reasonable requires no extended argument. As was said in *Euclid* v. *Ambler Realty Co., supra* (272 U. S., at page 388): "A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard."

Nor is there any contention that the area in which the appellee's land lies has been improperly zoned, that is, that it should have been included in an industrial rather than in a residence district.

The lower court held that the attempted exclusion of industrial uses from the residence district, as established by the ordinance, was bad in form; that the prohibition of the use of the property for all purposes except those expressly permitted exceeded the powers granted by the enabling act (Acts 1938, ch. 415, p. 777, Michie's Code of 1942, section 2880mm *ff., supra*), and deprived the owner of his property without due process of law. The holding is thus summarized in the concluding paragraph of the lower court's written opinion:

"For the foregoing reasons the court is of the opinion that the zoning ordinance in question is invalid in so far as it attempts to prohibit the use of the defendant's land for all purposes except the enumerated uses permitted, thereby depriving him of many lawful uses of his lot as

[3] "Dismissed for the want of a substantial federal question" under the authority of *Euclid* v. *Ambler Realty Co., supra,* and *Zahn* v. *Board of Public Works, supra. West Bros. Brick Co.* v. *Alexandria,* 302 U. S. 658, 58 S. Ct. 369, 82 L. Ed. 508, rehearing denied, 302 U. S. 781, 58 S. Ct. 480, 82 L. Ed. 603.

residence property which are not prohibited by any recognized extension of the police power; that said ordinance exceeds and is in violation of the grant made to the Board of supervisors for the exercise of the police power by Chapter 415 of the Acts of 1938, and is in violation of the Constitution of Virginia and of the United States wherever therein the formula employed in Section V of the ordinance is used. * * * "

As we understand it, the gist of the condemnation is that the restrictions on the use of property for residential purposes are phrased in the affirmative or permissive rather than in the negative or prohibitive. In other words, the argument is that the ordinance should have listed the *prohibited uses* in this district, leaving unimpaired all other uses, instead of listing the *permitted uses* and prohibiting all others. The first formula the lower court deemed to be proper and constitutional. It deemed the latter to be an unconstitutional deprivation of all uses followed by a "revestment" of the enumerated uses or rights.

We cannot agree with this reasoning. The determination of the constitutionality of such a legislative act turns on something deeper or more fundamental than whether the restrictions or limitations on the use of the property are phrased in the affirmative or in the negative.

It is true that under the guise of regulating or restricting the use of property a legislative body may not deprive the owner of all use thereof. Such was the situation in *Nectow* v. *Cambridge*, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842, cited in the trial court's opinion. In that case land zoned for residential use was unfit for such purpose. It was held that the effect of the ordinance was to deprive the owner of all use of the land.

The case before us presents no such problem. As has been said, the appellee does not contend that his property has been placed in the wrong district or is unfit for residential purposes. Of course, the ordinance prohibits certain uses of the land. All zoning laws do this. But there is no

general prohibition of all use. See *West Bros. Brick Co.* v. *Alexandria, supra* (169 Va., at page 287, 192 S. E. (2d), at page 887).

Fairly construed, the ordinance permits the owner in this district to make any use of his property consistent with residential uses and prohibits other uses. It accomplishes this by detailing or listing such permitted uses as are deemed to be consistent with residential purposes, rather than by enumerating the uses which are deemed to be inconsistent therewith and therefore prohibited. Nothing stands in the way of the use by the appellee of his property for the permitted residential purposes.

If it is constitutionally proper to say to an owner, "You may use your property for residential purposes only. Such use does not include the following which are hereby *prohibited*," why is it not proper to say, "You may use your property for residential purposes only. Such use includes only the following which are hereby *permitted*"? Certainly, under the first formula the uses may be as severely restricted as under the latter. A junk yard may be effectively excluded from a residential district by either formula.

Neither the trial court's written opinion nor the brief of the appellee cites any authority for the proposition that the ordinance is constitutionally defective in form.

In Smith's Law and Practice of Zoning,[4] page 64, the author says:

" 'The permission of specified uses or specified classes of uses, but not all, does not invalidate the ordinance. In fact it is upon that principle of exclusion and with that purpose in mind that the empowering legislation was enacted, and the restricting ordinances were adopted. When the general plan is to exclude objectionable buildings and uses, the ordinance is not invalid because innocent buildings or uses may fall within the proscription.' *Bond* v. *Cooke*, 237 App. Div. 229, 262 N. Y. S. 199. In that case

[4] Baker, Voorhis & Co., 1937, with introduction by Hon. Frederick E. Crane, Chief Judge of the New York Court of Appeals.

the section of the ordinance in question prohibited the use of any building or premises in the zone in question, except for certain specified uses named therein, which included residences and, when coupled therewith, the office or studio of a physician, dentist, lawyer, etc.

"Thus the ordinance may be inclusive or exclusive in its language or may be both. Quite often the inclusive provisions relate to all districts until the lowest classification is reached when the ordinance becomes exclusive."

Metzenbaum, The Law of Zoning,[5] page 298, has this to say on the form of the ordinance:

"As the art in the construction and drafting of zoning ordinances has been constantly enlarged and perhaps improved, and as these ordinances have grown more and more complex, detailed and lengthy, two distinct classifications have resulted—the so-called 'Inclusive' and the 'Exclusive' ordinance.

"Under an '*in*clusive' ordinance, only those uses which are specifically named are permitted, and so the burden is on the property owner to show that the use he proposes is one that is included or permitted.

"On the other hand, an '*ex*clusive' ordinance is built and based on the philosophy of admitting all that is not specifically excluded, and as a result thereof, the burden of showing that a use is not permitted or that it falls within the classification that is excuded, is a burden that rests on the municipality.

"The Cleveland, Ohio, ordinance is permissive or inclusive down to the 'Second Industrial' section, when, at that point, it adopted the exclusive method, because that seemed to be the better plan when it reached that lower gradation. In the 'Second Industrial District,' every use is permitted unless it is specifically excluded."

Mr. Metzenbaum lists the ordinances of Buffalo, Chicago, Cleveland (in part), Columbus, Denver, Indianapolis, and Washington, D. C., as being "inclusive or permissive." He

---

[5] Baker, Voorhis & Co., 1930. The author was counsel for the prevailing appellant in the *Euclid Case.*

lists those of Baltimore, Boston, Cincinnati, Dayton, New York, Pittsburgh, and Rochester as being "prohibitive or exclusive."

As a matter of fact, the New York City ordinance is a combination of the two.[6] Its regulation of residence districts reads thus:

"In a residence district no building shall be erected other than a building, with its usual accessories, arranged, intended or designed exclusively for one or more of the following specified uses: (Here follows a limited enumeration of permitted uses.)

"In a residence district no building or premises shall be used for any other than a use above specified for which buildings may be erected and for the accessory uses customarily incident thereto. * * * "

It will thus be observed that neither of these authorities attaches any significance to whether the ordinance be prohibitive or permissive in form. In numerous cases both types have been sustained.

The ordinance under review in *Euclid* v. *Ambler Realty Co., supra,* is set out in full in Metzenbaum's Law of Zoning, page 335 *ff*. It is identical in form with the Fairfax county ordinance here under review. For example:

"Section 4. Single Family House District.—In a class U1 district, no building or premises shall be used, and no building shall be erected, which is arranged, intended or designed to be used except for a class U1 use."

With respect to class U1 uses the following are permitted:

"Class U1 Uses. (Single family house.)

"(1) Single family dwelling.

"(2) Public park. Water tower or reservoir.

"(3) Suburban or interurban electric railway passenger station and right of way not including railway yards.

---

[6] The ordinance, including amendments to June 28, 1935, is printed in full in Smith's Law and Practice of Zoning, p. 449 *ff*. The restrictions pertinent to residence districts are found in Article II, section 3, p. 451.

The zoning ordinances of Chicago and Cleveland are printed in full in Metzenbaum's Law of Zoning, p. 353 *ff*.

"(4) Farming, non-commercial greenhouse, nursery, truck gardening."

The *Euclid Case* was argued twice before the Supreme Court, the property owner being represented by Newton D. Baker, one of the outstanding lawyers of our time. Despite the form of the ordinance its constitutionality was upheld. A reference to the briefs filed in that case shows that the form of the ordinance was specifically brought to the attention of the court, and the same contention made here was urged there.[7] While the opinion (272 U. S., at pages 380, 381) noted the form of the ordinance, it ignored the property owner's contention that it was defective.

The ordinance upheld in *Zahn* v. *Board of Public Works*, *supra*, was likewise of the permissive type, as will be seen by a reference to the lower court's opinion. 195 Cal. 497, 234 P. 388.

The form of the ordinance approved by us in *West Bros. Brick Co.* v. *Alexandria, supra,* is also of the permissive type. The restrictions on the use of property in a residence zone read thus:

"(A) *Use Regulations:* Unless hereinafter provided, no building or premises shall be used and no building or structure shall be hereafter erected, altered, or repaired except for one or more of the following uses:" Then follows a list of twenty-six permitted uses. (Record No. 1860, pp. 79, 80.)

As in the case before us, that ordinance was attacked on the ground that it exceeded the terms of the enabling act which, it was argued, authorized the city council "to regulate," but not to prohibit, the use of land. We rejected

---

[7] The property owner argued, "That municipal councils have not the power and that state legislatures cannot give them the power, under the guise of the police power, to restrict uses of private property by selecting among admittedly innocent and inoffensive uses those which the municipal legislature prefers to have followed and prohibiting others equally inoffensive, to which the owners of property prefer, for economic or personal reasons, to devote it." (Reply brief of Ambler Realty Company, page 4.)

that contention. (169 Va., at pages 284-286, 192 S. E., at pages 886-887.)

Moreover, we there said with respect to the form of the ordinance (169 Va., at page 287, 192 S. E., at page 887): "No general use of this land is prohibited; certain uses are, though they may be in themselves lawful." The same is true of the ordinance before us, as has been pointed out:

In *Cherrydale Cement Block Co. v. County Board of Arlington County*, 180 Va. 443, 23 S. E. (2d) 158, we upheld the constitutionality of an ordinance which excluded an industrial plant from an area zoned for residential purposes. That ordinance was likewise of the permissive type.

While we have not had access to all of the zoning ordinances in effect throughout the State,[8] of those submitted to us not one is entirely of the prohibitive type.

Those in the following jurisdictions are combinations of the exclusive and the permissive types, listing the *permitted uses* in the highly restricted areas, and enumerating the *prohibited uses* in the industrial or unrestricted areas: Cities of Richmond, Norfolk, Roanoke and Harrisonburg; counties of Roanoke and *Fairfax;* town of Front Royal.

The ordinances of Arlington, Amherst and Loudoun counties are of the permissive type with respect to the uses in both the residential and the commercial districts.

It appears from an examination of the Fairfax county type of ordinance that the uses applicable to the highest restricted areas are dealt with first, and those in the unrestricted areas last. Since the uses applicable to the highest restricted districts are fewer in number, it is simpler and more expeditious to list the consistent or permitted uses *than to detail those* which are inconsistent or prohibited. When the unrestricted areas are reached, it is simpler and more expeditious to list the inconsistent or prohibited uses which are relatively few in number.

---

[8] According to the records of the Virginia State Planning Board, as of February 15, 1947, 9 counties, 15 cities, and 14 towns have enacted zoning ordinances.

Thus it will be seen that there is nothing strange or unusual in the form of the Fairfax county ordinance. It is no maverick in the field of legislative draftsmanship. Quite to the contrary, it is in the usual form which, by inference at least, has been judicially approved time and time again. So far as we can find, there is no reported case or other authority which supports the view of the trial court.

Moreover, the language of the enabling act itself (Acts 1938, ch. 415, p. 777, *supra*) is permissive in form and seems to contemplate that the ordinance will follow this pattern. Section 1 (Michie's Code of 1942, section 2880mm) empowers the governing body of the county "to regulate, by ordinance, in the unincorporated portion of the county, the locations of those areas *which may be used* as places of residence or in which agriculture, forestry, trade, industry, or other specified uses *may be conducted.*" (Emphasis added.) See *Bond* v. *Cooke, supra.*

The draftsman of the act was, no doubt, familiar with the usual pattern of such ordinances.

On the whole we are of opinion that the trial court erred in holding that the ordinance, in so far as it affected the use of appellee's property, exceeded the authority delegated to the county by the terms of the enabling act, or infringed upon the owner's constitutional rights. We hold that the ordinance was a valid restriction against the industrial or commercial use of the property to which it is being put, namely, a junk yard. On the other questions discussed in the briefs we express no opinion.

The decree appealed from is reversed and the cause is remanded for the entry of a decree restraining the appellee from the use of the land for such purpose, unless such use be discontinued within a reasonable time. *Cherrydale Cement Block Co.* v. *County Board of Arlington County, supra* (180 Va., at page 448, 23 S. E. (2d), at page 161).

*Reversed and remanded.*