# 𝔖taunton

ALBERT J. CIAFFONE, WILLIAM L. SUGG AND MAXIMILIAN
WARE v. COMMUNITY SHOPPING CORPORATION
AND OTHERS.

September 10, 1953.

Record No. 4086.

Present, All the Justices.

The opinion states the case.

*James R. Sharp,* for the plaintiffs in error.

*James H. Simmonds, Lawrence W. Douglas, William J. Hassan* and *Alfred W. Trueax,* for the defendants in error.

SMITH, J., delivered the opinion of the court.

This is a proceeding under the declaratory judgments law, Code, § 8-578, to determine whether the Arlington county zoning ordinance is valid insofar as it purports to classify as local commercial (C-1) certain property located at the intersection of Williamsburg boulevard, North Sycamore street and Little Falls road in Arlington county.

Plaintiffs Albert J. Ciaffone and William L. Sugg own property on the west side of North Sycamore street, in Minor Hill subdivision, adjoining that of the corporate de-

fendant, which they acquired after the enactment of the challenged zoning ordinance. The other plaintiff, Maximilian Ware, owns property west of North Sycamore street and north of Williamsburg boulevard which he acquired in 1942.

Defendant Community Shopping Corporation purchased its land on March 28, 1951, for $22,000, a price commensurate with its being zoned for commercial use, after having been advised by the county zoning authorities that it was classified C-1 under the zoning ordinance. Defendants John E. Payne and Mary E. Duffin are owners of property on the east side of North Sycamore street. Defendants Albert T. Lundberg, C. L. Kinnier and Andrew Jensen are Arlington county officials charged with the duty of administering the zoning ordinance.

In 1948 the area in controversy was undeveloped farm land and the authorities charged with the duty of formulating an orderly plan for the growth of the county, after consultation with a planning engineer and a citizens advisory committee, decided that provision should be made for a commercial district at the road intersection herein involved. The County Board then gave notice as required by law of its intention to make a comprehensive revision of the county zoning ordinance enacted in 1942. This contemplated revision included the property here under discussion but no action was taken on this proposal until March 1950 when the County Board again gave notice by publication of hearings to be held on April 17, 1950. These hearings were held and on July 15, 1950 the amended ordinance was enacted.

The amended ordinance provides[1] that "The locations and boundaries of the districts shall be as shown on a map entitled, 'County of Arlington, Virginia—Amended Zoning Ordinance, July 15, 1950,' which map is hereby declared to be a part of this ordinance." This map is a small scale representation of a series of large scale sectional maps which

---

[1] Arlington county zoning ordinance, § 1, par. 2.

show in more detail the boundaries between districts. The property here involved is indicated on plate 4 of this series. Both of these maps show five streets converging at the intersection herein involved: North Sycamore street from the south, Little Falls road from the east, Williamsburg boulevard from the northeast, North Powhatan street from the northwest and another street, not designated by name but intended to be the extension of Williamsburg boulevard, from the southwest. The property indicated as C-1 on these maps lies on both sides of North Sycamore street, south of Little Falls road and southeast of the unnamed street. While the area shown as C-1 on the small scale map appears to be slightly different in shape and location from that shown on plate 4, the ordinance is clear that the districts as outlined on plate 4 should be given effect in cases where the two maps are in conflict.

On May 4, 1950, a deed of dedication with a plat of Minor Hill subdivision attached, was executed and recorded in the clerk's office. This plat, which was approved by the county planning engineer in accordance with the terms of a county ordinance, shows the exact location of the extension of Williamsburg boulevard to the west of North Sycamore street as it was laid out by the county engineering department the previous March.

The plaintiffs do not here attack the general scope and broad outline of the ordinance but contend that it is invalid because the property zoned C-1 is not that described in notices of hearings published before and after the enactment of the ordinance, and further that the ordinance is so indefinite and uncertain in locating the C-1 boundaries as to make the classification arbitrary and unreasonable and therefore invalid. More specifically the plaintiffs say, "The principal items of dispute are the locations of the boundaries of the property intended to be zoned commercial by the Amended Zoning Ordinance of July 15, 1950, as related to the property owned by the defendants Community Shopping Corporation, Payne and Duffin; and whether by application of any rule of interpretation set forth in the ordi-

nance the location of any property zoned commercial shifts from the location shown on the maps incorporated into the ordinance to a location approximately 100 feet further [*sic*] south along North Sycamore street."

Prior to the commencement of the proceeding here under review, Community Shopping Corporation filed its application for a writ of mandamus in the Circuit Court of Arlington county praying that the appropriate county officers be compelled to issue it a permit for the construction of a commercial building on its land. The final order in that case granting the relief prayed for and the petition and exhibits filed therein were admitted as evidence in the proceeding here on appeal.

The trial court heard the case at bar *ore tenus* and on November 26, 1951, entered its judgment declaring that the amended zoning ordinance of July 15, 1950, was legally adopted and valid in its application to the property in controversy, to which judgment we awarded the plaintiffs a writ of error.

To prove their case, plaintiffs called as witnesses two engineers who reviewed at great length the numerous exhibits. One of these engineers, C. L. Kinnier, a defendant, has been the secretary of the planning commission and planning engineer of Arlington county since 1945. After reviewing at length the events leading up to passage of the amended ordinance of 1950, he testified that originally no definite location was fixed for the north boundary of the C-1 district west of North Sycamore street, because it was dependent upon the final location of Williamsburg boulevard and this was established by his department in March 1950 and is shown on the dedication plat recorded May 4, 1950. He further testified that there was no shifting of the location after the passage of the ordinance and that the boulevard is now located where it was then established. He also testified that the description which he prepared after July 15, 1950, at the request of the County Board describes the same land shown on plate 4 as being C-1.

Lester V. Johnson, a civil engineer, was the other engineer relied on by the plaintiffs to prove their case. By placing a number of overlays on a composite plat of the lands in the area, he undertook to show that the C-1 property west of North Sycamore street as described on plate 4 has been shifted on the ground to the south of Williamsburg boulevard in order to coincide with the southern boundary of Williamsburg boulevard as finally located; that the C-1 districts on both sides of North Sycamore street are different in shape from those shown on the published map of July 28, 1950; that the boundaries of the parcels do not follow property lines; and that the metes and bounds description by Kinnier does not follow property lines.

This witness, who was called to demonstrate that there was uncertainty in the location of the area, made no survey on the ground and none of his drawings shows courses or distances. His overlays are based on certain assumed factors and he admitted his drawings represent approximations and that if he had assumed other factors his results would have been different. After a detailed explanation of the assumptions relied on in making his overlays, the witness was asked on cross examination:

"Q. With respect to Parcel A shown on the Minor Hill plat, [corporate defendant's property] whatever may be the difficulty of ascertaining the fourth line of the zoned area, it is perfectly clear that by any method of computation all of Parcel A would be in that commercially zoned area; wouldn't it?"

He answered, "I believe I would answer that yes because it falls into the area I have plotted on all the overlays. I would answer that question yes."

Johnson did not undertake to locate the C-1 parcels by reference to the rules of construction contained in the ordinance.[2] When asked if by applying these rules he would

---

[2] Arlington county zoning ordinance, § 1, par. 2, provides "Where uncertainty exists as to the boundaries of any of the aforesaid districts as shown on said maps, the following rules shall apply:

"(a) These district boundary lines are intended to follow street, alley,

have any difficulty identifying the corporate defendant's lot as C-1 he said he would not.

The benefits of proper zoning laws are generally recognized and few now would question the wisdom of such enactments. At first they were made applicable to cities and towns but more than twenty-five years ago the idea of planning for the future development of counties was made possible with the passage of laws enabling them to enact county zoning laws. See *County of Fairfax* v. *Parker*, 186 Va. 675, 44 S. E. (2d) 9.

■ Zoning laws, if reasonable, are construed to be a lawful exercise of the state's police power and if their reasonableness is fairly debatable the courts will lean to that construction which is consistent with their validity, and upon those who would set aside such ordinances rests the burden of proof. *Cherrydale, Etc.* v. *County Board*, 180 Va. 443, 23 S. E. (2d) 158; *County of Fairfax* v. *Parker*, *supra*; *West Brothers Brick Co.* v. *Alexandria*, 169 Va. 271, 192 S. E. 881, *app'l. dismissed*, 302 U. S. 658, 58 Sup. Ct. 369, 82 L. ed. 508.

Particular circumstances may require a more strict construction, such as was applied in *Washington, Etc., R. R.* v. *Alexandria*, 191 Va. 184, 60 S. E. (2d) 40, and *Carroll* v. *Arlington*, 186 Va. 575, 44 S. E. (2d) 6, 172 A. L. R. 1169, which were prosecutions to enforce the penal provision of certain zoning ordinances. The plaintiffs contend that the same strict rule of construction should be applied here. However, the action before us being to declare the ordinance void, the rule of construction applied in those cases is not applicable.

---

lot or property lines as they exist at the time of the passage of this Ordinance, unless such district boundary lines are fixed by dimensions as shown on the 'Zoning District Sectional Maps, July 15, 1950.'

"(b) Where such boundaries are so indicated that they approximately follow lot lines, and are not more than ten feet distant therefrom, such lot lines shall be construed to be such boundaries, unless specifically shown otherwise."

Certainty and definiteness are prime requisites of an ordinance and the courts may hold a particular zoning ordinance or a provision thereof to be invalid and void for uncertainty, vagueness or indefiniteness. However, when the courts are called upon to declare an ordinance inoperative for indefiniteness and uncertainty they will apply, with equal force, the principle that courts will not, in doubtful cases, pronounce a legislative act to be contrary to the Constitution. 58 Am. Jur., Zoning, § 25, pp. 954-55.

The fact that boundaries, separating commercial zones from those set apart for residential purposes, are not defined with desirable accuracy is not a reason for the courts to refuse to undertake to locate them. While the fixing of uncertain boundary lines is perhaps the most troublesome of all boundary problems, their location is a question of fact and may be proved by every kind of evidence admissible to establish any other controverted fact. *Cherrydale, Etc.* v. *County Board, supra; Speroni* v. *Board of Appeals of City of Sterling et al.*, 368 Ill. 568, 15 N. E. (2d) 302; Bassett, Zoning, (2d ed. 1940) p. 96; see *Richmond Cedar Works* v. *West*, 152 Va. 533, 147 S. E. 196.

In the *Speroni Case, supra*, it was held that a zoning ordinance was not invalid for uncertainty because the description of boundary lines of a commercial district at a street intersection was inaccurate and indefinite where the boundaries could be determined from the town's maps, ordinances and other admissible evidence.

The method used by Kinnier to determine the boundary lines of the C-1 district is similar to that approved in *Auditorium, Inc.* v. *Board of Adjustment of Mayor, Etc.*, —— Del. ——, 91 A. (2d) 528. There the board reached the conclusion that it was impossible to determine from the small scale zone map the exact boundary lines between districts. The court found that while the zoning map was small scale, it clearly indicated the dividing line between the districts and it was difficult " * * * to accept a conclusion that it would be impossible by enlargement process in scale

to reproduce the map of the block in question in a size sufficient to permit of precise measurement of the beginning and ending points of the zone boundary lines appearing on the Building Zone Map. * * *"

*Dowsey* v. *Kensington,* 257 N. Y. 221, 177 N. E. 427, 86 A. L. R. 642, is cited as a leading case holding a zoning ordinance void for indefiniteness in failing to establish with certainty district boundary lines. The zoning ordinance of Kensington, with the exception of a small plot, placed the entire village in a one-family residence district. The ordinance was held invalid, not because of uncertainty or indefiniteness or because the boundary lines failed to show what property was included in the district, but because of the arbitrary and unreasonable location of the boundary lines.

The learned trial judge heard the testimony, examined many maps, plats and drawings and exhibited a personal acquaintance with the area being considered. It was his judgment that the C-1 property was described with reasonable certainty and sufficient definiteness to be identified. It is our duty to determine whether there is evidence to support this finding.

Much of the testimony is confusing and often conflicting in its constant reference to the many plats, maps and drawings, but without them it would be wholly unintelligible. Their reproduction is impracticable, and if reproduced and reduced to sizes within limits they would be useless. It is sufficient to say that we have carefully examined them and read the testimony referring to them.

The defendant's initial contention is that the C-1 area on the map included in the notice of public hearing differs from the C-1 area on the maps included as a part of the amended ordinance. Code, § 15-859 provides that "* * * no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. * * *" This statutory provision

means only that parties in interest and citizens must be apprised of the proposed changes to be acted upon so they can be present to state their views. It does not require that the notice contain an accurate forecast of the precise action which the County Board will take upon the subjects mentioned in the notice of hearing. *Burlington* v. *Dunn*, 318 Mass. 216, 61 N. E. (2d) 243, 168 A. L. R. 1181; see also *Blankenship* v. *City of Richmond*, 188 Va. 97, 49 S. E. (2d) 321.

■ More serious is the contention that the ordinance is void for indefiniteness because the C-1 area has been shifted from its location on the maps referred to in the ordinance. That such shift occurred appears to have some basis in fact when we examine certain exhibits. But even if this be so, it does not follow that the C-1 boundaries are uncertain. It should be remembered that those responsible for the orderly planning for the future growth and development of this section, recognized that it would soon become a densely settled urban area and require local business centers to serve the needs of the expected residents. However, no definite location was fixed by the zoning commission in its original proposal to provide local commercial districts. Whether the final location of the district here involved would be at the intersection of Little Falls road with North Powhatan street or at some other place was not determined, but left for future decision. Later the site was made more specific by a plan to fix it at the intersection of Williamsburg boulevard and North Sycamore street but this was not then final because the extension of Williamsburg boulevard to the west of North Sycamore street had not been laid out. The contention that there has been a shifting of the C-1 area is based on the theory that its location had been exactly and finally fixed on the maps; but as we have already pointed out, the location outlined on the maps was contingent upon the path of the extension of Williamsburg boulevard, and the ordinance provides that where uncertainty exists boundary lines follow street lines as they existed at the

time of passage of the ordinance. Between the time of the published notice of March 1950 and the passage of the ordinance on July 15, 1950, Williamsburg boulevard to the west of North Sycamore street was established, dedicated and put under construction, which was all that was necessary to give finality to the location.

Williamsburg boulevard, at the time of the passage of the ordinance, was an existing street. When the rule of interpretation contained in the ordinance, that district boundary lines are intended to follow existing streets, is applied to Johnson's overlays, it is apparent that the street boundary lines of the C-1 area west of North Sycamore street are certain and definite. These boundaries are Williamsburg boulevard on the north, North Sycamore street on the east and North 29th street on the south.

It is argued that if it be conceded that Williamsburg boulevard is the correct northern boundary of the commercial area west of North Sycamore street, then the property of Ciaffone and Sugg will be bisected so as to classify a part commercial and a part residential. Such a classification, it is contended, is arbitrary, discriminatory and unreasonable. It is true that this C-1 parcel includes a greater area than that owned by the corporate defendant and does not follow the lines of the present owners of the property. It does not follow, however, that the ordinance is void. When the amended ordinance was enacted the property now owned by the plaintiffs, Ciaffone and Sugg, and the corporate defendant was all part of a single large undeveloped tract of land owned by one person. Therefore, there was no controlling reason why the western boundary should not have been located according to the Kinnier description. Furthermore, the fact that district boundary lines bisect the lots of persons who acquired their property after the passage of the zoning ordinance is immaterial.

There has been no attack on the general description of the C-1 parcel to the east of North Sycamore street and south of Little Falls road such as was made on the parcel

to the west side of North Sycamore street. This is understandable since these two thoroughfares which bound the property on the north and west were located and in use when the first steps were taken to establish a business center at this location. However, it is contended that there is uncertainty because except for the two streets there are no fixed lines to determine the area and the uncertainty cannot be remedied by reliance on the ordinance because "The C-1 area on the southeast corner does not follow the property line of either the Duffin property or the Payne property and it is apparent that the Board did not intend it to do so."

The Duffin tract contained more than two acres and the Payne tract contained twelve acres and were too large to have been wholly included in a C-1 district. To have followed the boundaries of the properties would have violated the zoning policy established by the county. The fallacy in the plaintiffs' argument is the contention that in fixing boundaries of districts in large tracts of land owned by one person the boundary lines or subdivision of that property fixed by the owner must be followed. The legislative body in locating such lines may include as much of the large tract as it sees fit and is not required to include all or any part.

The trial court accepted the evidence that the metes and bounds description prepared by Kinnier is the same as that outlined on plate 4 and that when the ordinance was amended the shape and size of the C-1 parcels were fixed by plate 4 and that Williamsburg boulevard had been definitely located. All that remained to be done by Kinnier was to locate the C-1 district in relation to the location of the five intersecting streets. Furthermore, the evidence shows that before purchasing, Community Shopping Corporation sought to determine whether or not its property was zoned as commercial. Those familiar with the maps determined that it was and subsequently it was so found in the mandamus case. Also, before any litigation was started Kinnier had prepared

the metes and bounds description of the area. There is, therefore, sufficient evidence to support the finding of the trial court that the C-1 area is described with reasonable certainty and sufficient definiteness to be identified and that the ordinance is valid in its application to the property in controversy.

The plea of *res adjudicata* interposed by Community Shopping Corporation was sustained by the trial court " * * * as to said Community Shopping Corporation, Albert T. Lundberg, County Manager of Arlington County; C. L. Kinnier, County Planning Engineer of Arlington County, Virginia; and Andrew Jensen, Building Inspector of Arlington County, Virginia; it having formerly been adjudicated in Action #3752 in this Court, in which the said parties were parties, that Parcel A, Section 1 of the Minor Hills Subdivision, Arlington County, Virginia, had a local Commercial Zoning Classification."

Ciaffone and Sugg sought tenaciously to intervene in the mandamus case but were denied leave to become parties and oppose the granting of a permit to Community Shopping Corporation. They were not parties to that proceeding and not bound by the judgment there entered. Burks, Common Law and Statutory Pleading and Practice 672 (4th ed., Boyd, 1952). In *Patterson* v. *Anderson,* 194 Va. 557, 564, 74 S. E. (2d) 195, Mr. Justice Eggleston said, "It is essential to the application of the doctrine [of *res adjudicata*] that the identical issue sought to be relitigated has been settled by a valid final judgment in a proceeding to which the identical persons or their privies were parties in the identical capacities in which they appear in the later ligitation." The essential requirements of the doctrine are not shown to be present in this case and the plea, therefore should have been rejected.

For the reasons here stated the judgment of the trial court will be modified and as modified the judgment is affirmed.

*Modified and affirmed.*