## CIRCUIT COURT OF LOUDOUN COUNTY

Stephen C. Clark et al.

v.

Town of Middleburg et al.

### Case No. (Chancery) 12718

BY JUDGE JAMES H. CHAMBLIN

### June 8, 1990

This cause is before the Court on the demurrer of the Town of Middleburg ("Town") and the Town Council of the Town of Middleburg ("Town Council"). The Court heard oral argument on June 1, 1990. For the reasons hereinafter set forth, the Demurrer is overruled, and the Town Council is granted until June 29, 1990, to file its Answer.

The Complainants seek a declaratory judgment that certain actions of the Town Council are null and void. If it is complained that the actions of a legislative body are null and void, then the body should have the right to defend its actions, and it should be a party defendant so that the court will be in a position to grant any warranted relief. The individual members of the Town Council are not made parties defendant. The second ground of the demurrer is not a ground, but a statement of law. Counsel has not cited, and I cannot find, any authority for the assertion in the third ground of the demur-

rer. The Bill of Complaint states a cause of action against the Town Council.

October 1, 1990

This cause is before the Court on the Demurrer of the defendants, John S. Pettibone, Jr., and Susan W. Pettibone (the "Pettibone Demurrer") and the Demurrer of the Town of Middleburg and its Town Council (the "Town Demurrer"). At oral argument on September 14, 1990, the Town withdrew its Motion of Partial Summary Judgment.

For the reasons hereinafter set forth, the Pettibone Demurrer and the Town Demurrer are each sustained in part and overruled in part.

A demurrer admits the truth of all well-pleaded material facts, and all reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer does not admit the correctness of the pleader's conclusions of law. *Fox v. Curtis*, 236 Va. 69 (1988); *Ames v. American National Bank*, 163 Va. 1 (1934). Likewise, a demurrer does not admit as true conclusions from facts not stated. *Arlington Yellow Cab Co. v. Transportation, Inc.*, 207 Va. 313 (1966). Keeping in mind these basic principles, each Demurrer is addressed below.

## I. *Pettibone Demurrer*

For purposes of ruling on this Demurrer, each numbered paragraph thereof is considered as a separate ground.

### 1. *Presumptive Reasonableness of the Ordinance*

The Complainants are attacking the action of the Town in rezoning 8.062 acres owned by the Pettibones from R-A to R-4. At oral argument, all parties agreed that the ordinance granting the rezoning as passed by the Town Council on April 12, 1990 (a copy of which is attached to the Town's Motion for Partial Summary Judgment) could be considered as a part of the Bill of Complaint for purposes of ruling on the Demurrers.

The Complainants attack the ordinance in two areas. First, they allege that the action of the Town Council in adopting the ordinance violates certain other Town ordinances and state statutes. Second, they allege that the action of the Town Council is unreasonable, arbitrary, and capricious. The approach to each prong of the attack is similar, but not exactly the same.

An ordinance is presumed to be valid until the contrary is shown. *Richmond-Ashland R. Co. v. Commonwealth*, 162 Va. 296 (1934). *See, Richmond Funeral Directors Association v. Groth*, 202 Va. 792 (1961). The burden is on the party alleging the invalidity of an ordinance to show it. *Norfolk P. & N.N. Co. v. Norfolk*, 105 Va. 139 (1906). The passage of an ordinance is legislative action, and as such, it is presumed to be reasonable. This presumption of reasonableness stands until it is overcome by evidence that the legislative action is unreasonable. The burden of establishing unreasonableness is on the one who assails the legislative action. *Board of Supervisors v. Lerner*, 221 Va. 30, 34 (1980); *Board of Supervisors v. Carter*, 200 Va. 653, 660 (1959). Legislative action is reasonable if the matter at issue is fairly debatable. *Lerner*, 221 Va. at 34; *County of Fairfax v. Parker*, 186 Va. 675, 680 (1947).

The Pettibones assert that even if the allegations of the Bill of Complaint are admitted as true, the action of the Town Council is still fairly debatable, and, therefore, the ordinance is valid. An issue is said to be fairly debatable when, measured by both quantitative and qualitative tests, the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. *Lerner*, 221 Va. at 34; *Fairfax County v. Williams*, 216 Va. 49, 58 (1975). In *Fairfax County v. Snell Corp.*, 214 Va. 655 at 659 (1974), quoted in *Lerner*, 221 Va. at 34, the Virginia Supreme Court said:

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance "must be sustained." If not, the evidence of unreasonableness defeats the presumption of reasonableness, and the ordinance cannot be sustained.

Because this ground of the Pettibone Demurrer refers to the "fairly debatable" standard, I interpret this ground to apply only to the attack on the ordinance as being unreasonable, arbitrary, and capricious as opposed to the attack based on violation of other ordinances or statutes.

Although the test quoted from *Snell* arose in the context of the consideration of evidence presented at trial, I see no reason why the test cannot be applied at the demurrer stage. If the Bill of Complaint

alleges facts which evidence unreasonableness, then the defendants must allege facts showing evidence of reasonableness in their answer. I am of the opinion that the Bill of Complaint does allege facts which evidence unreasonableness. Examples thereof are the following:

(a) Utilization of a proffer limiting use of a part of the subject property to agricultural use which is a use not permitted in a R-4 zone.

(b) No adjacent land being zoned R-4.

(c) This R-4 rezoning not being located adjacent to the Central Business District as stated in the Town's Comprehensive Plan.

(d) The impact of the rezoning on the Town's Old and Historic District and the failure to seek the advice of the Historic District Review Committee ("HDRC").

(e) The impact of the rezoning on the Town's sewage treatment plant which is at capacity.

(f) The impact of the rezoning on the roads and traffic.

I cannot find that the allegations of the Bill of Complaint present sufficient evidence of reasonableness to make the question fairly debatable. Therefore, the Pettibone Demurrer is overruled on this ground.

2. *Allegations of Bill of Complaint Are Facially Incorrect and/or Disproved by Other Allegations Therein*

As the allegations referred to in this paragraph of the Pettibone Demurrer are not specified, the Court treats it more as an observation than a ground therefor.

3. *Complainant's Theories Are Not Supported by Law and Facts Alleged Do Not Entitle Them to Relief*

As in No. 2 above and for the same reason, this is treated as more of an observation rather than a ground for the Pettibone Demurrer.

4. *Ordinance Is Per Se Illegal Because the Proffer Permits More Dwellings Than Allowed by the Zoning Ordinance*

For purposes of the Pettibone Demurrer, the following allegations of the Bill of Complaint material to this ground are admitted as true:

(a) The total area rezoned to R-4 contains 8.062 acres of which 1.826 acres lies in a flood plain.

(b) The 8.062 acres was rezoned subject to a concept plan and proffers which provide that:

(1) An area containing 2.872 acres in the northern part of the property would have no construction and would be used only for agricultural purposes;

(2) An area in the southern part of the property containing 3.364 acres would have 48 townhouses constructed thereon; and

(3) An area of .435 acres would be set aside as a permanent open space and recreation area.

(c) Townhouses are a permitted use in an R-4 zone.

Section 9–2 of the Middleburg Zoning Ordinance ("MZO") provides in part:

> Irrespective of the minimum area requirements for lots, density of development shall not exceed ten (10) dwelling units per net acre, defines as all land within the exterior boundaries of the land within the land within the R-4 zone minus lands in the flood plain, with slopes 25% or greater.

The complainants allege that the approval of the rezoning violates the MZO because it permits more than dwelling units on 2.929 acres (the area left to be built upon under the proffer) than the ten units per acre permitted by Section 9–2 of the MZO. The complainants specifically refer to the part of Section 9–2 quoted above.

The interpretation of a zoning ordinance is controlled by the principle that words in common use must be given their plain and natural meaning in the absence of any showing that such words were used in any other than their usual and ordinary sense. *McClung v. Henrico County*, 200 Va. 870 (1959). Of the words used in the part of Section 9–2 quoted above, the only words that are not used in their usual and ordinary sense are "net acre," but that phrase is defined by the words that follow. The definition contains no words not used in their usual and ordinary sense.

Section 9–2 of the MZO must also be construed in light of all the other provisions of the MZO, and, in particular, the other parts of Section 9–2. The first unnumbered paragraph of Section 9–2 require each townhouse to be located on a lot having a net area of at least 2,000 square feet per dwelling unit.

A proffer, which is included in the ordinance at issue, limits the number of townhouses that can be constructed on the property to 48. Proffers, under Section 15.1–491(a), are "reasonable conditions, in addition to the regulations provided for the zoning district by ordinance . . ." Section 20–2–1 of the MZO permits proffers in connec-

tion with an application for an amendment to zoning ordinance. Proffers cannot be construed to provide a variance from or to exceed the requirements of the zoning ordinance. As applied to his case, the proffer could only reduce the maximum number of dwelling units permitted on the land subject to the ordinance.

The proffers and the concept plan make it clear that all the property rezoned to R-4 (the entire 8.062 acres) is included in the proposed development. This is not a case where only 2.929 acres of the land rezoned to R-4 is being developed. Under Section 9–2, the maximum density allowable must be determined by "all land within the exterior boundaries of the land within the R-4 zone," which is 8.062 acres, minus the "lands in the flood plain," which is 1.826 acres, leaving a "net acre" figure of 6.236 acres. At "ten (10) dwelling units per acre," the maximum density of development is 62 units for the entire 8.062 acre development. The proffers limited the development to 48 units which is a reasonable condition in addition to the regulations for the R-4 zone.

Although counsel for the Pettibones and the Town may have referred to the subject development as "cluster development" or "planned development," I do not feel that it is such a development in the sense as used, for example in Article 10 of the MZO (Planned Residential Development Districts). Section 9–2 merely sets the total number of dwelling units permissible in a development in a R-4 zone.

In setting a minimum townhouse lot area of 2,000 square feet in the first paragraph of Section 9–2, the Town recognizes that more than ten units could be constructed on an acre even when all the other conditions of the MZO are satisfied. At 2,000 square feet per lot, there could theoretically be 21 townhouses per acre. If the Town Council had intended that there could be no more than ten townhouses constructed on an acre, then it would not have established a minimum lot area as small as 2,000 square feet.

Finally, the complainants allege that the same calculation as set forth above for the maximum permissible density applies in their argument concerning possible future action by the Town as to the subject property (see paragraph 14 of the Bill of Complaint). They cannot have it both ways. They have admitted that the maximum number of units that can be built on the 8.062 acres is 62. The allegations of the Bill of Complaint and the ordinance itself clearly show that 8.062 acres are being developed.

The Pettibone Demurrer is sustained on this ground.

5. *Proffer Restricts A Part of the Property to A Use not Permitted in An R-4 Zone*

The complainants allege that proffers (5) and (7), which provide that land north of the stream (2.872 acres) shall be used only for agricultural purposes. Agricultural uses are not permitted in an R-4 zone. Proffer (5) provides, "This land shall be used only for agricultural purposes." Proffer (7) provides that "the Applicant retains the right to use this acreage for agricultural purposes."

It is clear that agricultural uses are not permitted in a R-4 zone. Therefore, the Town has no authority by the instant ordinance to grant the Pettibones the right to use the 2.872 acres for agricultural purposes. If the Town desired to permit agricultural uses in a R-4 zone, then MZO must be amended under the provisions of Section 20–2(a) because it would be an amendment to the text of the MZO. This suit involves an amendment initiated under Section 20–2(b) by a property owner. Further, a proffer cannot create a violation of a zoning ordinance because if it does, then it is *per se* unreasonable and not permitted under Section 20–2–1.

The Pettibones assert that the proffer provisions should be merely construed as an additional restriction limiting accessory uses to agricultural. Sections 9–1, 9–1–1, and 9–1–2 provide only for two permitted uses in a R-4 zone, to wit: "Townhouses" and "Multi-family dwellings." There are no provisions for accessory uses in Article 9 (R-4 District) of the MZO. Counsel asserted, but offered no authority for, the proposition that accessory uses are permitted as a matter of law in all zoning districts. In the Demurrer, it is asserted that "agricultural uses such as flower gardens, vegetable gardens, lawns, shrubs, etc., are permitted accessory uses in all zoning districts," but no provision of the MZO is cited to support the assertion. These uses appear more in the nature of uses naturally associated with the permitted uses in R-4 zones of townhouses and multi-family dwellings than accessory agricultural uses.

The validity of the proffer cannot be sustained because the Town might in the future revise the zoning ordinance to allow agricultural uses for the 2.872 acre parcel. The former zoning of R-A allowed agricultural uses; therefore, the Pettibones could have excluded the 2.872 acre parcel from the rezoning if they wanted to retain it for agricultural uses. Including it in the rezoning, and thereby, obtaining

a greater development density, goes to the reasonableness of the Town's action as opposed to it being in violation of the other provisions of the Town ordinances and state statutes.

I do agree with the Pettibones that there is no authority for the Complainant's position that the "commitment" to agricultural use for the 2.872 acre parcel must be made "pursuant to dedication by easement." See paragraph 13 of the Bill of Complaint. Any restriction could be done by proffer or by restrictive covenant.

While the Town may have made an error in accepting a proffer as to agricultural use of the northern trace or may have exceeded its authority in doing so, I do not believe that this invalidates the entire ordinance. Invalidity of one proffer should not defeat an entire rezoning ordinance. Therefore, for purposes of the Pettibone Demurrer, the Bill of Complaint states facts among which the court could declare the following provisions:

Proffer (5): "and this land shall be used only for agricultural purpose"

Proffer (7): "and the Applicant retains the Right to use this acreage for agricultural purposes"

to be null and void, but that the balance of the proffers and the ordinance are valid, unless otherwise invalid.

The Pettibone Demurrer is, therefore, partially sustained and partially overruled on this ground.

## 6. What the Town Might Do in the Future as to the 2.872 Acre Parcel and Its Use Restriction per the Proffer

This ground of the Pettibone Demurrer addresses what might possibly happen in the future because of the "agricultural purpose" restriction proffer affecting the 2.872 acre tract. The Demurrer is partially sustained on this ground because:

(1) A zoning ordinance amendment cannot be held invalid merely because the present or future owner of the land might petition the Town in the future for a change of zoning (this, at most, might have some relevance in a reasonableness argument);

(2) The Town would not be prohibited from denying an application for the construction of as many as 28 additional units on the northern trace (this is a logical conclusion from the Court's analysis of the maximum density allowed in this case as set forth in 4 above, and the proffers have limited the entire 8.062 acres to 48 townhouses);

(3) It cannot be presumed that the Town will allow in the future that which is prohibited by the MZO; and

(4) A Court cannot declare a rezoning amendment invalid based on what might happen in the future (this argument, at best, applies to the reasonableness standard).

The Pettibone Demurrer is sustained on this ground only to the extent that the allegations of paragraph 14 of the Bill of Complaint do not allege facts showing the ordinance to be *per se* invalid. Such allegations may be applicable to a reasonableness argument.

7. *The Town Had No Authority to Engage in "Density Swapping"*

This ground of the Demurrer is directed to the allegations of paragraph 15 of the Bill of Complaint. The Complainant's argument that the Town had no authority to allow the Pettibones to "borrow" density rights (also called "density swapping") is the same argument advanced in 4 above but stated in a different way. The Pettibones obviously included the northern 2.872 acres in the rezoning and the development to be able to have a greater development density. As stated above, this is permissible under the MZO. "Density swapping" is not a legal term with an established meaning under Virginia law. The Demurrer is sustained on this ground.

8. *Spot Zoning and Lack of Conformity to the Town's Comprehensive Plan*

Paragraph 16 and 17 of the Bill of Complaint purport to allege that the Town's action is invalid because it is a spot zoning. The allegations of paragraph 16 are merely conclusory without alleging facts to support spot zoning. Paragraph 17 alleges that the rezoning did not follow the Town's Comprehensive Plan and the subject land has no other R-4 zoned property immediately adjacent to it.

If the purpose of the ordinance is solely to serve the private interests of the landowner, then it is spot zoning. *Wilhelm v. Morgan*, 208 Va. 398, 403 (1967). The Bill of complaint does not allege facts to support a finding of spot zoning. Merely having no adjacent land zoned R-4 does not make the rezoning a spot zoning. The proffers themselves show that the rezoning has a public benefit and does promote public safety, morals, and welfare.

A comprehensive plan is only a guideline to be followed by the governing body. It is not a controlling ordinance. It is not the zoning ordinance. There is no authority that land can only be rezoned in

accordance with a comprehensive plan. The plan is only a guide. *Lerner*, 221 Va. at 37; *Williams*, 216 Va. at 59; *Snell*, 214 Va. at 660. Under *Lerner*, it is a matter within the discretion of the Town Council to decide whether to adhere to the plan or to follow some other reasonable approach in determining whether to grant or deny rezoning. 221 Va. at 37. As alleged in paragraph 17 of the Bill of Complaint, the rezoning is consistent with the Town's Plan as to permitted dwelling units per acre but not consistent as to location of high density residential communities. This inconsistence is a matter for the Town council to resolve, and any attack thereon must be under the reasonableness — fairly debatable test.

The Demurrer is sustained on this ground.

### 9. *Failure of the Town to Consider Historic Impact*

The complainants allege that the rezoning is *per se* unreasonable, arbitrary, and capricious because a part of the land rezoned (and on which part of the units are to be constructed) is located within the Old and Historic Middleburg District ("Historic District") and the Town Council failed to consider its impact, and further, the Town Council did not submit the application to the HDRC for advice and assistance under Article 22 of the MZO.

The failure of the Town Council to consider the impact of the rezoning on the Historic District may be a factor to be considered under a reasonableness argument, but there is no provision in the MZO requiring the Town Council to so consider it. There is no requirement in Article 22 of the MZO requiring a rezoning application to be submitted to the HDRC.

Section 22–2–5(A) merely provides that the HDRC has a duty to assist and advise the Town Council and the Planning Commission in matters involving historically significant sites and buildings. The phrase "land usage" is used in Section 22–2–5(A) as an example of a matter involving such sites. It cannot be construed to impose a duty on the HDRC to advise and assist the Town Council and the Planning Commission on any and all matters of land usage in the Historic District.

Section 22–2–5(B) imposes a duty on the HDRC to conduct studies of preservation and utilization of historic assets in the Town only when such studies are deemed necessary by the Town Council or the Planning Commission. Discretion is granted to each body in determining whether such studies are necessary. The failure to ask

for a study is a matter that, at most, is applicable under the reasonableness standard. No provision requires such studies as a part of any rezoning application in the Historic District.

The Bill of Complaint does not allege that there are historically significant sites and buildings or historic assets on the property rezoned. Additionally, there is no allegation that the Town Council would have acted differently if the HDRC had become involved in the rezoning application.

The enabling statute, § 15.1–503.2, does not require that a rezoning application be referred to a review board.

The facts alleged in the Bill of Complaint concerning the Historic District do not overcome the presumption that the Town Council was cognizant at the time it acted of all existing facts and circumstances bearing upon the public policies and private rights relating to its action. *I.D.A. v. LaFrance Cleaners*, 216 Va. 277, 282 (1975); *Blankenship v. City of Richmond*, 188 Va. 97, 105 (1948).

For the foregoing reasons, the Town did not lack jurisdiction because of a failure to consider the impact on the Historic District or refer the matter to the HDRC for advice, assistance, or study. The Demurrer is sustained on this ground.

10. *The Town Council Ignored the Weight of the Evidence Presented to It as to the Impact on the Town's Services and the Possibility that the Pettibones Could Develop Adjacent Land Outside the Town*

There is no rule of law that the Town Council must base its decision on the weight of the evidence presented to it. *See I.D.A. v. LaFrance Cleaners*, 216 Va. 277 (1975). A town council can act on the basis of its own knowledge or its own investigation. There is no requirement that the Town must have its services in place before a rezoning can be granted. However, the matters alleged in paragraph 21 of the Bill of Complaint tend to show unreasonableness of the Town Council's actions. Therefore, the Demurrer is sustained on this ground but only to the extent that the Town Council had no duty to weight the evidence presented to it.

11. *The Town Council Failed in Its Responsibility to Secure a Commitment for Payment of the Cost of the Sewer Plant Expansion Caused by the Development Allowed by the Rezoning*

This ground of the Demurrer is that Proffer (4) actually does what the complainants allege that the Town Council should have done,

i.e., secure a commitment from the Pettibones to pay for the sewer plant expansion caused by the development. This allegation (as set forth in paragraph 22 of the Bill of Complaint) is part of the complainants' unreasonableness claim. I feel that other evidence needs to be supplied in order for the Court to determine if the Proffer (4) does what the Pettibones assert it does. Such evidence includes the amount of, and the determination by the Town of the amount of, the availability and/or tap fees for the development. Accordingly, the Demurrer is overruled on this ground.

12. *Underestimation by the Town Council of the Impact of the Project on the Road System*

In paragraph 23 of the Bill of Complaint, the complainants allege that, as evidence of unreasonableness, the Town severely underestimated the impact of the project on the road system. The Pettibones assert that this is not a ground to reverse a legislative zoning decision. If a court could declare a rezoning invalid merely because a governing body underestimated the impact of the rezoning on the road system, then it would be a complete erosion of the separation of powers doctrine. For reasons stated before, the allegations tend to show unreasonableness, and the Demurrer is sustained on this ground but only to the extent that the underestimation of the impact of the project on the road system does not, in and of itself, provide a ground to reverse a legislative zoning decision.

## II. *Town Demurrer*

With the exception of the sixth ground, the Town Demurrer is sustained in its entirety. The sixth ground makes no sense and is simply not comprehensible. Therefore, the Town Demurrer is overruled as to the sixth ground. All of the grounds for the Town Demurrer (except for the sixth) are covered by the Pettibone Demurrer.

Let counsel for defendants collaborate on a decree sustaining and overruling the two demurrers as set forth herein and granting the complainants twenty-one days to replead if they be so advised.