## Staunton

### CLARENCE O. WILEY, JR. v. COUNTY OF HANOVER.

September 6, 1968.

Record No. 6789.

Present, Eggleston, C.J., Buchanan, Snead, Carrico, Gordon and Harrison, JJ.

*Junie L. Bradshaw* (*Wells, Smithers and Bradshaw*, on brief), for plaintiff in error.

*Andrew J. Ellis, Jr., Attorney for the Commonwealth for Hanover County*, for defendant in error.

EGGLESTON, C.J., delivered the opinion of the court.

Clarence O. Wiley, Jr., was charged in a warrant with the violation of the Hanover County Code in that he "did raise, shelter and

harbor a certain number of pigeons" in the county. He was convicted in the County Court and fined $10. On appeal to the Circuit Court, by consent he was tried by the court without a jury, found guilty, and the same fine was imposed on him. On appeal to this court he contends that (1) the ordinance under which he was convicted is invalid because it is arbitrary, vague and unreasonable and contrary to the requirements of Code § 15.1-491 [Repl. Vol. 1964], and (2) moreover, the evidence adduced does not support a finding that he has violated the ordinance.

Code § 15.1-486 [Repl. Vol. 1964] authorizes the governing body of a county to enact zoning ordinances regulating, restricting, permitting and prohibiting the use of land and the construction of buildings thereon in the territory under its jurisdiction. Section 15.1-491 provides that such a zoning ordinance "may include, among other things, reasonable regulations and provisions" respecting its administration and enforcement and a provision for the imposition of a fine of not less than $10 nor more than $250 upon conviction of a violation of the ordinance.

Article 4 of the ordinance here involved provides for a "Residential, Limited, District R-1," with this "Statement of Intent:"

"This district is composed of certain quiet, low density residential areas plus certain open areas where similar residential development appears likely to occur. The regulations for this district are designed to stabilize and protect the essential characteristics of the district, to promote and encourage a suitable environment for family life where there are children, and to prohibit all activities of a commercial nature. To these ends, development is limited to relatively low concentration and permitted uses are limited basically to single unit dwellings providing homes for the residents plus certain additional uses, such as schools, parks, churches, and certain public facilities that serve the residents of the district.

"4-1. Use regulations.

In residential district R-1, structures to be erected or land to be used, shall be for one or more of the following uses:

"4-1-1. Single-family dwellings.

\* \* \* \* \*

"4-1-6. Accessory buildings permitted as defined, however, ga-

rages or other accessory buildings, such as carports, porches and stoops attached to the main building shall be considered part of the main building. No accessory building may be closer than one foot to any property line."

The ordinance defines an "accessory" building as "a subordinate use or building customarily incidental to and located upon the same lot occupied by a main use or building."

The extracts from the ordinance before us do not include the penalty provision, but since there is no complaint of the absence of such a provision we may assume that it authorizes the imposition of the fine of $10 which was here imposed and is in accordance with the terms of the enabling act. Code § 15.1-491(e).

The evidence shows that at the time of his arrest the defendant was the owner and occupant of a single-family dwelling in the county, located in a residential district which was zoned as "Residential, Limited, District R-1." He erected on this property a small building, approximately 8 by 12 feet, which did not require a building permit and is used as a tool house and pigeon roost for homing pigeons. For a number of years the defendant has raised homing pigeons as a hobby and has housed them in the small building. He belongs to various "racing clubs" whose members customarily house their pigeons in the same manner as he does. These pigeons are not permitted to fly around the neighborhood but are caged and shipped to given points, sometimes out of the State, from which they return to their roost on the defendant's property. The timings of their return trips are noted and put in competition with those of pigeons flown by other fanciers.

While it appears that the warrant against the defendant was issued on the "complaint of a neighbor," there is no evidence that the raising and harboring of these pigeons constitute a nuisance. There is evidence that in the same district there were "dog houses, tool houses and the like whereby residents kept their pets or pursued hobbies."

In the drafting of comprehensive zoning ordinances two classifications are generally employed: The *inclusive* type which permits only those uses specifically named, and the *exclusive* type which prohibits specified uses and permits all others. Some ordinances utilize both forms and all three are recognized as valid classifications. Yokley, Zoning Law and Practice, 3d Ed., Vol. 1, § 4-5, pp. 143, 144; *County*

*of Fairfax* v. *Parker*, 186 Va. 675, 683, 684, 44 S. E. 2d 9, 13 (1947).

The ordinance with which we are here concerned is of the *inclusive* type in that it specifies uses which are *permitted* in the respective zones and does not specify those which are *prohibited* therein. In the "Residential, Limited, District R-1" the "permitted uses are limited basically to single unit dwellings providing homes for the residents." The "use regulations" permit the use of structures to be erected on the land to "single-family dwellings." "Accessory buildings" are also permitted and under the definition of that term found in the ordinance the use thereof must be such as is "customarily incidental to * * * a main use" of the family dwelling.[1]

Since the ordinance does not in terms prohibit the raising, sheltering or harboring of pigeons or other fowl in a residential district, the question presented is whether such an activity is a permitted use of an "accessory building" which is "customarily incidental to" the "main use" of a family dwelling.

Whether such activity is "customarily incidental" to the main use of a family dwelling and permitted under the terms of the ordinance is a matter to be determined from the evidence adduced. Since this is a criminal prosecution the burden was on the county to show beyond a reasonable doubt that the activity was not a permitted use within the terms of the ordinance. *Washington & Old Dominion R. R.* v. *City of Alexandria*, 191 Va. 184, 187, 60 S. E. 2d 40, 42 (1950). Here the evidence falls far short of this requirement. There is an entire lack of evidence as to whether the raising, sheltering or harboring of homing pigeons as a hobby was or was not customarily incidental to the main use of a family dwelling. On behalf of the prosecution it is admitted that tool houses and small dog houses are customarily regarded as incidental to the use of a residence and permitted in residential districts. If so, it would seem to be equally susceptible of proof that the raising of homing pigeons had no such favored status, as the prosecution contends.

Moreover, as was pointed out in *Caldwell* v. *Commonwealth*, 198 Va. 454, 458, 94 S. E. 2d 537, 540 (1956), an act creating an offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, so that a person of

---

[1]Similar definitions of an "accessory" use are frequently employed in zoning ordinances and are generally upheld. Yokley, Zoning Law and Practice, 3d Ed., Vol. 1, § 4-26, pp. 183, 184; Rathkopf, Law of Zoning and Planning, Vol. 1, ch. 23, pp. 23-1, 23-2; 101 C. J. S., Zoning § 178, p. 934.

ordinary intelligence may know what is thereby required of him. See also, *Tinsley* v. *City of Richmond*, 202 Va. 707, 714, 119 S. E. 2d 488, 492, 493 (1961); *Southern Railway Co.* v. *Commonwealth*, 205 Va. 114, 116, 135 S. E. 2d 160, 164 (1964).

Clearly, the ordinance here fails to meet this elementary requirement. It is certainly doubtful, to say the least, whether a person of ordinary intelligence would know from the language of the ordinance whether the keeping of homing pigeons on his residential lot would be "customarily incidental" to the use of his dwelling and therefore permitted, or whether such activity was prohibited. Had it been the purpose of the ordinance to prohibit the raising, sheltering or harboring of pigeons or other fowl in a residential district, as the county claims, this could easily have been accomplished by a simple and direct provision to that effect. Here there was no such provision and the matter is left in doubt by the language employed in the ordinance. For this reason, also, the conviction of the defendant cannot be sustained.

The judgment appealed from is reversed and the prosecution dismissed.

*Reversed and dismissed.*