## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

John W. Guntner

June 10, 1991

Case No. (Criminal) 69798

By JUDGE ROSEMARIE ANNUNZIATA

This cause came to the Court upon a *de novo* appeal filed by the defendant following his conviction in the General District Court for violating Fairfax County Code Section 41-1-4 (1976), which prohibits keeping swine in this county. A conviction under this statute may be punished by confinement in jail for up to six months or the imposition of a fine of up to one thousand dollars or both. Fairfax County Code §§ 1-1-12, 1-1-14. At the conclusion of the Commonwealth's case, the defendant moved to strike the Commonwealth's evidence, and the Court took the matter under advisement.

The defendant is the owner of a black female vietnamese potbellied pig, a small animal of even disposition which goes by the name of Petunia. Petunia is kept in Mr. Guntner's home as a pet. Apparently, a vietnamese potbellied pig is well adapted for this type of use, being clean, quiet, and endearing.

In considering the issue, the Court perused some of the existing jurisprudential and other literature (submitted by amici of the Court), which reference the subject of pigs, particularly the subject of keeping pigs at home.

It is clear from this literature that the adaptability of pigs to homeliving is a well-known phenomena to which most Americans are introduced in early childhood. *See,*

*e.g.,* "This little piggy went to market, this little piggy stayed home." Anonymous Children's Counting Rhyme.

However, in one early case involving the question of the constitutionality of a zoning ordinance which excluded certain uses in residential areas, Mr. Justice Sutherland of the United States Supreme Court sounded a klaxon of alarm, noting that "a pig in the parlor instead of the barnyard" may be a "right thing in the wrong place . . . ." *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388 (1926) (dicta).

It has also been noted by one essayist that, even in the absence of laws adverse to the practice, the keeping of pigs at home is not without its risks (to the pig) nor its benefits (to the pig owner). *See* Charles Lamb, "Dissertation upon Roast Pig." The story takes place in China where the practice was to eat meat raw and to raise children and pigs together in the parlor. One of the children, finding the pigs burnt to a crisp after an accidental fire in the home and touching the skin of one of them to determine signs of life, scorched his fingers. Putting his fingers quickly into his mouth to cool, he discovered a theretofore unknown and delightful taste. The family, compelled to keep their discovery a secret because of the practices of the day, satisfied their yearning for pig roasts by periodically burning down their straw cottage and the pigs contained therein. Finally accused and brought to trial, the family's acquittal was won based solely on the tasting of the evidence. Charles Lamb, "Dissertation upon Roast Pig" in *The Complete Works and Letters of Charles Lamb* 108-115 (1963).

While the Court found that the literature on the keeping of pigs in the home provided a certain perspective on the matter, it was not particularly helpful in resolving the specific issue before the Court. Indeed, the nature of the issue before the Court appears to be one of first impression. Its determination, however, is governed by well-established principles applicable to the construction of laws making certain conduct criminal.

The ordinance under which Mr. Guntner was convicted below reads:

> (a) It shall be unlawful, the provisions of any other Section of this Code or other

ordinance of the County to the contrary notwithstanding, for any person to keep or raise swine in any hogpen, as defined in this Section, unless such hogpen or any part thereof is located more than one hundred (100) yards from any dwelling house or any store, restaurant, office, church, school or other public building or any well or spring used for a private or public water supply.

(b) As used in this Section, the word "swine" shall include hogs and pigs regardless of age and the term "hogpen" shall mean an enclosure of any kind in which swine are kept or raised.

(c) This Section shall not be applicable to the keeping of swine on any property located in any agricultural district, as defined by the Zoning Chapter of this code.

Fairfax County Code § 41-1-4.

The County has adopted the above ordinance pursuant to the grant of power given by the General Assembly in Virginia Code § 15.1-517, which provides that:

Any county may, whenever in the judgment of the board of supervisors the same is necessary for the preservation of public health, regulate by ordinance the keeping of animals or fowl, other than dogs and cats, within a certain distance of residences or other buildings or wells, springs, streams, creeks, or brooks and provide that all or certain of such animals shall not be kept within certain areas.

The Court previously ruled during the trial of this matter that regulating the keeping of swine is within the legislative grant of authority.

Our inquiry does not end with this determination, however, since "an act creating an offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, so that a person of ordinary intelligence may thereby know what is required of him." *Wiley v. Hanover County*, 209 Va. 153, 156-57 (1968) (citations omitted). Thus, the terms of

penal statutes must be strictly construed against the Commonwealth, and the accused is entitled to the benefit of every reasonable doubt in the construction of the statute. *Berry v. City of Chesapeake*, 209 Va. 525, 526 (1969).

The issue presented becomes whether Fairfax County Code § 41-1-4, strictly construed, clearly prohibits keeping a vietnamese potbellied pig as a pet in a residence. The Court has determined that such conduct is not clearly prohibited.

The ordinance prohibits keeping or raising swine in a hogpen, "unless such hogpen or any part thereof is located more than one hundred (100) yards from any dwelling house . . . ." Petunia herself is kept in a dwelling house. The statute prohibits or excepts certain hogpens on the basis of their proximity to a dwelling house; therefore, hogpens are clearly something independent of and exterior to a dwelling house. Thus, notwithstanding the definition of "hogpen" as "any enclosure," the Court holds that it is not clear to a person of ordinary intelligence that a dwelling house is included within the term "hogpen;" i.e., that "a pig in the parlor instead of the barnyard" is prohibited.

For the above-stated reasons, the Court finds that the defendant's motion to strike should be sustained. An order dismissing the charge against the defendant will accordingly be entered by the Court.