## Board of Supervisors of Madison County

v.

## L. Patrick Gaffney, Jr., et al.

Record No. 911943

November 6, 1992

Present: All the Justices

*Virginius R. Shackelford, III (Shackelford, Honenberger, Thomas & Willis*, on briefs), for appellant.
*John G. Berry (Berry & Early*, on brief), for appellees.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal, we consider whether the Madison County zoning ordinance permits landowners to operate a nudist club on their property, which has a conservation zoning classification.

L. Patrick Gaffney, Jr., Phyllis J. Gaffney, and Leighton B. Brown (landowners) own approximately 200 acres of land in the Criglersville area of Madison County. The property is adjacent to the Blue Ridge Mountains and is accessed by State Route 642.

On a portion of their property, the landowners operate a nudist club, consisting of 170 paying members. In 1990, the nudist club collected fees of approximately $20,000 to $25,000 and realized a profit. Members of the club and their guests participate, while nude, in such activities as volleyball, frisbee, croquet, horseshoes, picnics, barbecues, swimming, hiking, and "sing-alongs." Facilities at the nudist club site include a solar shower, a swimming pond with a cement bottom, hiking trails, barbecue and horseshoe pits, a sandbox, play swings, three campsites, and an outhouse.

Persons who live adjacent to the landowners' property complained to the Board of Supervisors of Madison County about the operation of the nudist club. From his property, Lee R. Knighting is able to see nude persons sunbathing and playing volleyball and frisbee. Thomas Lee Utz, another landowner, observed nude members of the club playing volleyball. According to Utz, nude persons can be seen from State Route 642, a public highway. Additionally, Steven Smith Hoffman, a member of the Board of Supervisors of Madison County, received complaints from citizens who informed him that they observed nude persons on the landowners' property.

Hoffman, while visiting Knighting's property, saw approximately 25 nude persons at the nudist club.

The landowners deny that nude persons can be seen from State Route 642. They claim that "little can be seen from any occupied, neighboring property with the unaided eye."

In January 1987, the landowners requested, and were granted by the planning commission, a special use permit to develop a campground and lodge on their property. However, the planning commission did not know that the landowners planned to operate a nudist club on their property. The Board of Supervisors revoked the special use permit in January 1989, on the ground that the landowners had not disclosed, in their original application, that they would operate a nudist club.

Subsequently, the landowners filed suit challenging the County's actions. The trial court held that the planning commission's actions were invalid because the Board of Supervisors could not legally delegate to the planning commission the power to grant special use permits. Later, the Board of Supervisors amended the County's zoning ordinance to vest in itself the power to issue special use permits. The landowners have sought no further special use permit, nor have they requested a change in the zoning classification of their property.

The Board of Supervisors initiated this zoning enforcement proceeding by filing a petition to enjoin the landowners from operating a nudist club on their property, which enjoys a Conservation, C-1 zoning classification. Following a bench trial, the court refused to grant the injunction and held that the use of the property as a nudist club is consistent with the zoning status of the property. We awarded the County an appeal.

The Board of Supervisors argues that the trial court erred because a nudist club is not an articulated permissive use in the Conservation, C-1 zoning district. The landowners argue, and the trial court held, that the landowners' use of their property qualifies as a "preserve and conservation area" which is permitted by right in the Conservation, C-1 zoning district.

Article 1 of the Madison County zoning ordinance states, in part:

This ordinance has been designed (1) to provide for adequate light, air, convenience of access and safety from fire, flood, and other dangers; (2) to reduce and prevent congestion in the public streets; (3) to facilitate the creation of a convenient,

548

attractive, and harmonious community; (4) to expedite the provision of adequate police and fire protection, disaster evacuation, civil defense, transportation, water, sewerage, schools, parks, forests, playgrounds, recreational facilities, airports, and other public requirements; (5) to protect against destruction of or encroachment upon historic areas; and/or (6) to protect against over-crowding of land, undue density of population in relation to the community facilities existing or available, obstruction of light and air, danger and congestion in travel and transportation or loss of life, health, or property from fire, flood, panic or other dangers.

Article 2 of the ordinance divides the County into numerous zoning districts, including Conservation, C-1. Article 3 of the County's ordinance describes the purpose of the Conservation, C-1 zoning classification:

This district is established for the specific purpose of facilitating the conservation of water, timber, and other natural resources, reducing soil erosion, protecting upland watersheds, lessening the hazards of flood and fire, and enhancing existing and future farming operations. The district covers steep slopes, hardwood forests, areas of erosive soils, and those portions of the county which are occupied by various open spaces such as parklands, farms, lakes or mountains. Because of the fragile nature of the district, intensive residential or urban development and uses not consistent with the existing character of the district are inappropriate.

Article 3 of the ordinance also identifies the land uses permitted by right:

Single-family detached dwelling (excluding mobile home)
General farming, agriculture, horticulture, dairying and forestry
Public school, public park and public playground
Preserve and conservation area
Hunting or fishing club
Sawmill
Small boat dock (with repair)
Cemetery and graveyard
Church, parish hall and rectory

Accessory use and building

Public service corporation transmission lines, poles, pipes, meters, transformers and other facilities necessary for the transmission and maintenance of public service utilities . . . .

Farm Winery with wholesale sales

This article also enumerates certain special permit uses, none of which are implicated here.

Article 2-4 of the ordinance states:

Any use not specifically permitted as a matter or [sic] right or by special use permit is prohibited. Requests for such prohibited uses shall be governed by the terms of this ordinance specified in Section 15-7 (Uses Not Provided For) and Article 19 (Amendments).

Furthermore, Article 15-7-1 of the ordinance, entitled "Uses Not Provided For," states, in relevant part:

If in any zone established under this ordinance a use is not specifically permitted, it is prohibited. If an application is made by a property owner to the administrator fur [sic] such use, the administrator shall refer the application to the Planning Commission. After a public hearing in accordance with Section 15.1-431 of the Code of Virginia (1950, as amended), the Planning Commission shall make its recommendations to the Board of Supervisors to (a) amend the ordinance to allow the use within the zone by right (b) amend the ordinance to allow the use within the zone with a special use permit, (c) rezone the area and thereby allow the use, or (d) deny the use in that zone.

The County's zoning ordinance makes it abundantly clear that only uses specifically enumerated within a zoning district are permitted without a special use permit. We have approved the use of inclusive zoning ordinances.

In the drafting of comprehensive zoning ordinances two classifications are generally employed: the *inclusive* type which permits only those uses specifically named, and the *exclusive* type which

prohibits specified uses and permits all others. Such ordinances utilize both forms and all three are recognized as valid classifications
. . . .

The ordinance with which we are here concerned is of the *inclusive* type in that it specifies uses which are *permitted* in the respective zones and does not specify those which are *prohibited* therein.

*Wiley* v. *County of Hanover*, 209 Va. 153, 155-56, 163 S.E.2d 160, 162-63 (1968) (emphasis in original); *See County of Fairfax* v. *Parker*, 186 Va. 675, 684, 44 S.E.2d 9, 13 (1947). Additionally, "the burden is upon the property owner to show that the use he proposes is one that is included or permitted" by the zoning ordinance. *Parker*, 186 Va. at 684, 44 S.E.2d at 13 (citation omitted).

We hold that under the facts and circumstances of this case, the landowners failed to prove that use of their property to operate a nudist club constitutes a use, permitted by right, in accordance with Article 3 of the County's zoning ordinance. The zoning ordinance is inclusive in that it specifies the uses that are permitted in each zone. The zoning ordinance, in at least two provisions, Articles 2-4 and 15-7-1, states that a use not specifically permitted in a zone is prohibited. The operation of a nudist club is not a use specifically permitted by right in the Conservation, C-1 district.

Next, the landowners argue that the nudist club is operated "as an open space recreational area," that the Madison County Comprehensive Plan "places a heavy emphasis upon conservation and recreation," and that the operation of their particular nudist club is consistent with conservation and recreation which, they say, the County encourages in the conservation zone. The fallacy in this argument is that the operation of a nudist club constitutes a land use and, thus, we must look to the specific language contained in the County's ordinance and ascertain if the use is an articulated use permitted by right. Because the operation of a nudist club is not such a use, the landowners may not conduct such activity on their property.

Accordingly, we will reverse the judgment of the trial court and remand this case for the entry of a decree consistent with this opinion.

*Reversed and remanded.*

JUSTICE WHITING, concurring in the result.

I agree with Justices Keenan and Lacy that the use classification is invalid because it has no nexus with the use of the land itself.

I note that in holding the operation of a nudist club is not a use specifically permitted by right in the ordinance, the majority recites specific testimony of witnesses Knighting, Utz, and Hoffman indicating that nude persons could be observed without binoculars from various vantage points off the property. If my understanding of the holding is correct, it is that the operation of a nudist club is not a use permitted by right, nor would it qualify for a special use permit under the terms of the ordinance as written. Should this be the holding, it seems to me that it would make no difference whether persons off the property could ascertain that club members were unclothed.

However, the majority apparently believes the facts regarding what can be seen of club activities from vantage points off the property are material, because it has noted them. For this reason, I write to point out an erroneous treatment of the facts on appellate review. I believe this erroneous treatment came about because the majority has overlooked what this court has said are two well-settled principles of appellate review.

The first principle is that we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the parties who prevailed before the factfinder. *See, e.g., Oden v. Salch,* 237 Va. 525, 527, 379 S.E.2d 346, 348 (1989); *Morris v. Mosby,* 227 Va. 517, 522, 317 S.E.2d 493, 497 (1984); *Bassett Furn. Indus., Inc. v. McReynolds,* 216 Va. 897, 899, 224 S.E.2d 323, 324 (1976). The second principle is that a chancellor's finding on disputed facts, supported by credible evidence, binds this Court. *Yamada v. McLeod,* 243 Va. 426, 430, 416 S.E.2d 222, 224 (1992); *Rubin v. Gochrach,* 186 Va. 786, 794, 44 S.E.2d 1, 4 (1947). Applying those principles of appellate review, I note the testimony of two witnesses that is contrary to the testimony of the three witnesses the majority apparently believed in arriving at its factual finding.

James R. Hale, a member of the Board of Supervisors of Madison County, was called as an adverse witness by the landowners. Hale had visited the area to ascertain what could be observed of the activities on the property.

Hale testified that on a clear day, at essentially the same vantage points described by Knighting, Utz, and Hoffman, without binoculars, ''[I] could see animals in the background but if I didn't know what a cow or dog and all looked like, I would say it could have

been one or the other.'' Hale's estimate of the distances of those vantage points to the areas of club activity was three-quarters of a mile, a distance substantially longer than the distances to those same vantage points as estimated by the board's witnesses.

The second witness was L. Patrick Gaffney, Jr., one of the landowners, who testified that persons at the vantage points described by the board's witnesses could not, without binoculars, ascertain that club members were unclothed while engaged in the various recreational activities on the property. Nothing in the record indicates that Hale and Gaffney were not credible witnesses, or that their testimony was inherently incredible.

Given Hale and Gaffney's testimony, and the chancellor's factual finding supported by that testimony, I think the majority is bound by the chancellor's factual finding that persons off the property could not, without binoculars, have observed that club members were unclothed while engaged in club activities on the property. I further believe the majority should have explained its holding in the light of those facts, not the facts to the contrary that were rejected by the factfinder.

Although the majority's erroneous treatment of the facts may not have affected its decision, this treatment underscores the weakness of the majority's rationale in arriving at the ultimate decision.

JUSTICE KEENAN, with whom JUSTICE LACY joins, concurring.

I agree that the trial court erred in concluding that the landowners' use of their property qualified as a ''preserve and conservation area'' under the Madison County Zoning Ordinance (the Ordinance). Nevertheless, I write separately because I disagree with the majority's analysis that the land use in question was a ''nudist club.''

''Use,'' as defined in the Ordinance, is ''[t]he principal purpose for which a lot . . . is or may be used, occupied or maintained.'' Madison County Zoning Ordinance § 21-202. Thus, by definition, a ''use'' describes the purpose for which a parcel of land is or may be utilized. The term ''use'' has also been defined as including ''occupations and activities of persons occurring on the land.'' 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.01, at 9 (3d ed. rev. vol. 1991).

In the case before us, the purpose for which the land is being used is that of a private, recreational facility. The fact that the users of this recreational facility are unclothed does not alter the character of the land use. Here, as shown by the record, the specific activities conducted on the land are playing volleyball on a volleyball court, cooking food in an outdoor barbecue pit, swimming in a cement-bottom pond, and playing horseshoes in a horseshoe pit, as well as consumption of food in a picnic area and the use of hiking trails, campsites, a children's play area, an outhouse, and a solar shower.

The majority's characterization of the above land use as a "nudist club" improperly focuses on whether the people participating in these activities are attired, rather than on the activities and facilities which themselves impact the land. This distinction is critical in the analysis of an "inclusive" ordinance, such as the one before us because, under the majority's view, a governmental entity can secure the exclusion of any land use simply by assigning it a label not found in the ordinance. Here, the majority's characterization of the land use as a "nudist club" bears no relationship to how the land itself is being used. Lacking such a nexus, this use classification is invalid. *See* 1A Edward H. Zeigler, Jr., *Rathkopf's The Law of Zoning and Planning* § 2.03, at 2-29 (4th ed. 1992).

Since the landowners' use, as shown by the record, is that of a private, recreational facility, I would hold that, as a matter of law, it does not qualify as a "preserve and conservation area" under the Ordinance. In reaching this conclusion, I express no opinion whether the landowners would qualify under the Ordinance for a special use permit to operate as a private playground or camp because that issue is not before us in this appeal.