## CIRCUIT COURT OF WARREN COUNTY

Carolinas Cement Co.,
t/a Roanoke Cement Co.

     v.

Zoning Appeals Board et al.

          Case No. (Law) 99-158

Ramona Bowden et al.

     v.

Zoning Appeals Board et al.

          Case No. (Law) 99-168

          August 30, 1999

BY JUDGE JOHN E. WETSEL, JR.

    These consolidated cases came before the Court on August 25, 1999, on an appeal from a decision of the Warren County Board of Zoning Appeals that

a cement storage and distribution facility was not a warehousing and distribution facility and was, therefore, not a permitted use in an industrial district and other related issues. Thomas M. Lawson and Deborah M. Chandler, Esquires, appeared for Carolinas Cement Company; Clifford L. Athey, Jr., and Richard R. G. Hobson, Esquires, appeared for Bowden and Weddle; and Douglas W. Napier, Esquire, appeared for the Board of Zoning Appeals.

The Court first considered the Landowners' motion to dismiss based on the misnomer of Carolinas Cement, which motion was denied. The record was then argued, and after consideration the Court decided to affirm the decision of the Board of Zoning Appeals in part and reverse it in part.

### I. *Statement of Material Facts and Proceedings*

On February 16, 1999, Roanoke Cement Company ("Roanoke") filed a By-Right Use Application in the Warren County Planning and Zoning Department, requesting approval of a cement and fly ash distribution facility to be constructed on Parcel 57A, which is zoned agricultural, and Parcel 57A1, which is zoned industrial, both of which parcels are referred to as the "Property." (References to the record before the Court as returned by the BZA are referred to as Land Owner Exhibits ("L.O. Ex. —") and references to Roanoke's exhibits filed with the Court are referred to as "Roanoke Ex. — ".) Roanoke Cement has leased the Property from the Allegheny Power Company.

No industrial use of the Property has existed since the electrical power generating plant formerly on the Property was demolished many years before Roanoke filed its application. The Property is now vacant except for an unmanned electric transformer substation. (L.O. Exs. 1; 5; 18; 11, p. 6.)

The Property is located on the north bank of the Shenandoah River adjacent to the Front Royal Country Club, which is listed as an Historic District on the Virginia Landmark Register and the National Register of Historic Places. (See map attached to L.O. Ex. 2 and L.O. Exs. 9 and 17.) The Property is bounded on its other sides by agriculturally zoned land. (L.O. Exs. 5 and 18.)

Roanoke's site plan for its proposed facility includes storage silos which are seventy-five feet high in height. Cement will be railroaded to the site, stored in bulk storage tanks, and then distributed in bulk by tractor trailer over the access road to the Property.

The only road access to the Property is by a .9 mile private access road from State Route 658, most of which is in the agricultural district. Roanoke

proposes to build a new industrial access road on Parcel 57A which is zoned agricultural.

The tractor-trailer truck use proposed by Roanoke on the existing private access road may be a new and different use of the private access road which has been infrequently traveled since demolition of the electric generating plant. (L.O. Ex. 18.) Roanoke's application described the estimated traffic for the proposed use to be four to seven trucks per day or twenty to twenty-five per week. (L.O. Ex. 6, Community Impact Statement, p. 3.) However, the application also proposes deliveries to the terminal of thirty rail cars per week, which the landowners contend would yield 84 to 120 tractor truck loads per week. (L.O. Ex. 7, p. 2.) No evidence was produced of the historical use of the existing road.

Ramona Bowden, by letter dated February 25, 1994, (Roanoke Ex. H) and Benjamin and Carol Weddle, by letter dated February 8, 1995, (Roanoke Ex. H) gave notice to Mr. Stanley, the Director of the Department of Planning and Zoning and Deputy Zoning Administrator of Warren County, that they were opposed to the Roanoke facility being located on the Property.

On March 4, 1999, Stanley wrote to Roanoke commenting on the status of Roanoke's by-right use application and advising Roanoke that its application would be presented to the Planning Commission on March 10, 1999. He further advised Roanoke that "this use determination and/or waivers may be appealed to the Warren County Board of Zoning Appeals within thirty days of this notice in accordance with the Code of Virginia Section 15.1-496.1." He further advised Roanoke that the decision shall be final and unappealable if not appealed within thirty days. (Roanoke Ex. B.)

Neither Ramona Bowden, Benjamin Weddle, nor Carol Weddle received Stanley's March 4, 1999, letter to Roanoke commenting on the status of Roanoke's by-right use application. (L.O. Ex. 20.)

On March 5, 1999, the Weddles, by Counsel, delivered a letter to the Planning Commission members opposing the by-right use application which was to be reviewed by the Planning Commission at their March 10th meeting. (L.O. Ex. 7.)

The March 10, 1999, meeting of the Planning Commission was canceled and rescheduled for March 17, 1999. (BZA 6/2 Tr. 68.)

When the Land Owners arrived at the March 17, 1999, meeting of the Planning Commission, they received a copy of the proposed agenda for the meeting dated March 17, 1999. The Roanoke By-Right Use Application was published in the agenda under the heading "By-Right Use Approvals" and contained a written statement by Stanley that "This use is permitted as a by-

right use in the Industrial Zoning District, Section 180-28(B)(10)" (referred to herein as the "Determination"). (L.O. Ex. 1.)

During the discussion of the Roanoke application during the meeting, Stanley verbally advised the Planning Commission that the proposed use was a by-right use permitted by right in the Industrial Zoning District. (L.O. Ex. 14; Planning Commission minutes for the March 17, 1999, meeting, p. 1, hereafter referred to as "P.C. Min. 3/17".)

Pursuant to Section 6.1 of its Bylaws, the Planning Commission scheduled a Public Hearing on the By-Right Use Application to be held on April 14, 1999. (P.C. Min. 3/17, p. 5.)

The Land Owners received actual notice of Stanley's By-Right Use Determination with respect to Roanoke's By-Right Use Application on March 17, 1999, when they read the agenda of the March 17, 1999, Planning Commission Meeting. (BZA 6/2 Tr. 64.)

On April 13, 1999, the Land Owners appealed to the BZA. (L.O. Ex. 1.)

On May 26, 1999, the BZA held a Public Hearing on Appeal No. 99-05-01 filed by the Land Owners and received evidence from the Land Owners in the form of nineteen separate exhibits as well as oral testimony from the Weddles and two expert witnesses. (BZA 5/26 Tr. 3.) The only speaker at the public hearing who spoke in opposition to the appeal was Mr. Lawson, counsel for Roanoke. (BZA 5/26 Tr. 5-45.)

Upon the advice of the County Attorney, the BZA adjourned the May 26, 1999, meeting and tabled the appeal for consideration of the written materials submitted by the Land Owners, their expert witnesses, and others. (BZA 5/26 Tr. 50.)

The BZA convened a regular meeting on June 2, 1999, to continue discussion of the appeal. At this hearing, the BZA ruled that: (1) Stanley had the authority to declare that the proposed use of the property at issue was a by-right use; (2) that the appeal to the BZA by the Land Owners was filed in a timely manner; (3) that Roanoke, if permitted to use the Property, could use only the existing paved private road; and (4) that the proposed use is not a by-right use as contemplated in the Ordinance for an industrial site. (See BZA 6/2 Tr. 61-95.)

## II. *Conclusions of Law*

An appeal of a BZA decision to a circuit court is not a trial *de novo*, and the circuit court's function is limited to examining the scope of the BZA proceeding and considering the correctness of the BZA decision. *Foster v. Geller*, 248 Va. 563, 449 S.E.2d 802 (1994). "The decision of a board of

zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or was plainly wrong and in violation of the purpose and intent of the zoning ordinance." *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727 (1987).

The Landowners' appeal was timely filed because it was filed within thirty days of Mr. Stanley's March 17, 1999, publication in the Planning Commission agenda of his decision that the proposed use was a by-right use. Virginia Code § 15.2-2311(A) sets forth the time in which an aggrieved party must appeal a determination made by a Zoning Administrator:

> (A) *Appeals to Board.* An appeal to the board may be taken by any person aggrieved or by any officer, department, board or bureau of the locality affected by any decision of the zoning administrator or from any *order, requirement, decision or determination* made by any other administrative officer in the administration or enforcement of this article or any ordinance adopted pursuant thereto. Notwithstanding any charter provision to the contrary, *any written notice of a zoning violation or written order of the zoning administrator* dated on or after July 1, 1993, *shall include a statement informing the recipient* that he may have a right to appeal the notice of a zoning violation or a written order within thirty days in accordance with this section, and that the decision shall be final and unappealable, if not appealed within thirty days. The appeal period shall not commence until the statement is given. The appeal shall be taken within thirty days after the *decision* appealed from by filing with the zoning administrator, and with the board, a notice of appeal specifying the grounds thereof.

(Emphasis added.)

The statute provides that the "recipient" shall be given notice of his appeal rights. The recipient in this case was Roanoke Concrete. The landowners in this case are not technically adjoining landowners, so the issue in this case is really what notice must be given to an interested landowner who has intervened in a land use zoning case in order to trigger his appeal rights. The first sentence of the statute gives a right of appeal to "any person aggrieved ... by any decision of the zoning administrator," so while the landowners were "aggrieved parties," they were not "recipients."

Roanoke has not met its burden of demonstrating that the BZA's finding that the landowners' appeal was timely filed is plainly wrong or based on erroneous law. The plain language of Virginia Code § 15.2-2311 provides that

the thirty-day appeal period is triggered by written notice of a determination of the zoning administrator. The BZA was not plainly wrong in finding that Mr. Stanley's March 4, 1999, letter was not binding upon Land Owners, who had never received the letter and who were not recipients of the letter within the contemplation of the statute. The BZA was also not plainly wrong in finding that the Land Owners did not receive written notice of the determination until March 17, 1999, the date on which Mr. Stanley provided the public with the proposed Planning Commission agenda stating his determination that the proposed use was a by-right use, and in concluding that the respondents timely filed their appeal with the BZA because they filed it on April 13, 1999, which was within thirty days of their receipt of their written notice of Mr. Stanley's determination.

The Deputy Zoning Administrator was authorized to make the threshold or provisional determination as to the by-right use in Roanoke's application, because the ultimate decision as to whether a new use of property is a permitted use is vested in the Planning Commission. Warren County Ordinance § 180-64.A(5). Virginia Code § 15.2-2286(A)(4) authorizes localities to appoint zoning administrators to facilitate the administration of their burgeoning zoning ordinances, and it provides that:

> For the administration and enforcement of the ordinance including the appointment or designation of a zoning administrator who may also hold another office in the locality. The zoning administrator shall have all necessary authority on behalf of the governing body to administer and enforce the zoning ordinance. His authority shall include (i) ordering in writing the remedying of any condition found in violation of the ordinance; (ii) insuring compliance with the ordinance, bringing legal action, including injunction, abatement, or other appropriate action or proceeding subject to appeal pursuant to § 15.2-2311; and (iii) in specific cases, making findings of fact, and with concurrence of the attorney for the governing body, conclusions of law regarding determinations of rights accruing under § 15.2-2307 ....

The landowners argue that since the creation of the office of deputy zoning administrator is not expressly authorized by the enabling statute, Warren County's creation of the position violates the Dillon Rule. The Supreme Court recently discussed the Dillon Rule in *City of Chesapeake v. Gardner Enterprises*, 253 Va. 243, 246, 482 S.E.2d 812 (1997):

The Dillon Rule of strict construction controls our determination of the powers of local governing bodies. This rule provides that municipal corporations have only those powers that are expressly granted, *those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable. Ticonderoga Farms v. County of Loudoun,* 242 Va. 170, 173-74, 409 S.E.2d 446, 448 (1991); *City of Richmond v. Confrere Club of Richmond,* 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990).

(Emphasis added.)

To resolve a Dillon Rule argument, the purpose and objective of the enabling statute must be considered to determine whether the authority to create the office of deputy zoning administrator is necessarily implied from the powers expressly granted by the statute. *Gordon v. Fairfax County,* 207 Va. 827, 833, 153 S.E.2d 270, 275 (1967). The statute must be given a rational interpretation consistent with its purposes, and not one which will substantially defeat its objectives. *Mayor v. Industrial Dev. Auth.,* 221 Va. 865, 869, 275 S.E.2d 888, 890 (1981); *Norfolk Southern Ry. Co. v. Lassiter,* 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952). Counties are corporate bodies, so they must act through agents or surrogates, and the statute does not limit the number of zoning administrators, nor prohibit the creation of deputy zoning administrators. Given the volume of work in large and developing counties, the work of the Zoning Administrator often cannot be performed by one person. The argument that the statute contemplates that there could be only one person performing the duties of the zoning administrator and that deputy or assistant zoning administrators could not be appointed as needed to meet the workload of the office ignores reality and is without merit.

Mr. Stanley is both Planning Director and Deputy Zoning Administrator for Warren County. On June 27, 1995, the Warren County Board of Supervisors passed a resolution affirming the job descriptions for various administrative positions, including Planning Director and Zoning Administrator. Warren County Resolution, June 27, 1995, § 2180, enumerates the duties and responsibilities of the Planning Director. According to the general definition as adopted by the Board of Supervisors, Mr. Stanley as Planning Director is authorized and charged with the responsibility to "plan, organize and direct all planning and zoning activities" which includes the authority to oversee "the development, interpretation and enforcement of the Zoning Ordinance and related environmental codes," and review of zoning permit applications and amendments.

According to the June 27, 1995, Warren County Resolution § 2140, the Zoning Administrator is empowered to coordinate and to perform code enforcement activities. More specifically, the Zoning Administrator enforces the local zoning ordinance and land use regulations as well as interprets the zoning ordinance and makes recommendations to the Planning Director. As Deputy Zoning Administrator for Warren County, Mr. Stanley is granted the authority to interpret and enforce the zoning ordinance and its relevant regulations.

The dicta in *Gwinn v. Collier*, 27 Va. Cir. 13 (1991), indicates that the Deputy Zoning Administrator possesses authority similar to that of the Zoning Administrator to render by-right property use determinations. In *Gwinn*, the Fairfax Circuit Court held that a non-residential use permit issued by the Zoning Inspector is equivalent to an issuance by the Zoning Administrator and therefore constitutes a final decision allowing a nonconforming use subject to appeal. According to the Court, the permit certificate "clearly shows that [it] was granted by the Zoning Inspector as the agent of the Zoning Administrator as it bears the signature stamp of the Zoning Administrator and was merely created by the Zoning Inspector." *Id.* at 18. By analogy, Mr. Stanley as the Deputy Zoning Administrator is an agent of the office of Zoning Administrator. As an agent of the County, Mr. Stanley may be granted those powers enumerated in § 15.2-2286(A)(4).

The BZA erred and was plainly wrong in determining that under the Ordinance § 180-28, the proposed use by Roanoke Cement of Parcel 57A1, which is zoned industrial, was not a use permitted by-right. The Warren County Zoning Ordinance is an inclusive use type ordinance, and in *Board of Supervisors v. Gaffney*, 244 Va. 545, 422 S.E.2d 760 (1992), the Supreme Court commented on such zoning ordinances:

> The ordinance with which we are here concerned is of the *inclusive* type in that it specifies uses which are *permitted* in the respective zones and does not specify those which are *prohibited* therein. *Wiley v. County of Hanover*, 209 Va. 153, 155-56, 163 S.E.2d 160, 162-63 (1968) (emphasis in original); *See County of Fairfax v. Parker*, 186 Va. 675, 684, 44 S.E.2d 9, 13 (1947). Additionally, "the burden is upon the property owner to show that the use he proposes is one that is included or permitted" by the zoning ordinance. *Parker*, 186 Va. at 684, 44 S.E.2d at 13 (citation omitted).

Warren County Ordinance § 180-28, which is the zoning ordinance in question, specifies permitted uses in the Industrial District and states:

Uses Permitted by Right. Subject to the requirements and limitations of these regulations, any one of the following uses is permitted as a matter of right on each lot: ... .

(10) Warehousing *and* distribution facilities.

(Emphasis added.)

This is but one of thirteen classes of permitted uses, which are described in general, generic terms in the ordinance.

[A]ny one of the following uses is permitted as a matter of right on each lot:

(1) Building supply sales.

(2) Research facilities, not including use of live animals or the mixing and/or fusion of chemical elements and/or compounds.

(3) Manufacture, production, fabrication, processing, assembling, testing, packaging, storing and distribution of:

(a) Electrical, electronic, computer or mechanical goods.

(b) Photographic equipment.

(c) Computation and communication equipment.

(d) Optical instruments.

(e) Benign toys and games.

(f) Household appliances.

(g) Clocks and watches.

(h) Furniture products.

(i) Apparel and other sewing operations.

(j) Plastic products and plastic-based products.

(k) Laundry operation.

(l) Plumbing supplies, pipe, HVAC equipment and related materials, including screened outdoor storage of same. Use shall not include smelting.

(4) Printing, publishing, engraving, bookbinding, and other reproductive services.

(5) Stone cutting or monument works.

(6) Textile weaving and knitting.

(7) Soft drink bottling works.

(8) Offices for executive administration and data processing activities.

(9) Educational or training institutions.

(10) *Warehousing and distribution facilities.*

(11) Commercial nurseries, greenhouses, and garden centers.

(12) Ancillary food and business services, including services provided for the convenience of employees of the principal facility.

(13) (Reserved.)

(14) Front Royal-Warren County Airport.

(Italics added.)

"Warehousing and distribution facilities" is listed in the ordinance as a by right use, and the only bulk storage facilities in the industrial district which require a special use permit are "bulk storage of gasoline, petroleum products or natural gas" and "yard[s] for storage of coal, lumber, building materials or contractors equipment." Warren County Zoning Ordinance § 180-28(D). While it was not contended by any of the parties that these special use provisions expressly apply to Roanoke's cement distribution facility, these provisions illustrate that the authors of the ordinance knew how to limit certain uses to special uses.

The ordinance is clear and unambiguous. "Where the language in an ordinance ... is plain and unambiguous, it must be given that plain meaning or intent." *Hanover County v. Bertozzi*, 256 Va. 350, 354, 504 S.E.2d 350 (1998), *quoting with approval Board of Supervisors of Fauquier County*, 242 Va. 452, 456, 410 S.E.2d 607 (1991). Where a statute is clear, the court may not "resort to legislative history and extrinsic facts" to interpret words whose meaning is clear; it must "take the words as written" and give them their plain meaning. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). As the Supreme Court recently stated in *Sansom v. Board of Supervisors*, 257 Va. 589 (1999) (construing a county subdivision ordinance):

> "When ... a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Hubbard v. Henrico Ltd. Partnership*, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (citing *City of Virginia Beach v. Flippen*, 251 Va. 358, 362, 467 S.E.2d 471, 473-74 (1996); *Marsh v. City of Richmond*, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987)). An undefined term must be "given its ordinary meaning, given the context in which it is used." *Dep't of Taxation v. Orange-Madison Coop. Farm Serv.*, 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980). "The context may be examined by considering the other language used in the statute." *City of Virginia Beach v. Bd. of Supervisors of Mecklenburg County*, 246 Va. 233, 236-37, 435 S.E.2d 382, 384 (1993).

"[T]he [zoning] ordinance should not be extended [or restricted] by interpretation or construction beyond its intended purpose." *Donovan v. Board of Zoning Appeals*, 251 Va. 271, 274 (1996). "The rule which prevails in most jurisdictions, at least in the absence of any statute to the contrary, is that since zoning ordinances are in derogation of the common law and operate to deprive an owner of a use thereof which otherwise would be lawful, they should be strictly construed in favor of the property owner." 83 Am. Jur. 2d, *Zoning and Planning*, § 699. *See, e.g. Young v. Town of Vienna*, 203 Va. 265, 123 S.E.2d 388 (1992) (revenue ordinance must be strictly construed).

Warren County Ordinance § 180-8 defines a distribution facility as: "An establishment engaged in the receipt, storage and distribution of goods, products, cargo and materials, including transshipment by rail, air or motor vehicle."

The ordinance does not define the term "warehousing." Merriam-Webster's Collegiate Dictionary (10th ed. 1993) defines "warehouse" as "a structure or room for the storage of merchandise or commodities." This is the commonly accepted definition of a warehouse. Applying these definitions, the concrete storage and distribution facility proposed to be built by Roanoke Cement is clearly a "warehousing and distribution" facility within the meaning of Warren County Zoning Ordinance § 180-28. In a zoning use case, the focus of the analysis is on the character of the activity on the property rather than on the physical characteristics of the structures housing the use, the latter of which, absent other special restrictions, must simply comply with the technical provisions of the ordinances governing the construction of new buildings.

This was a case of first impression for the Board of Zoning Appeals, and it wrestled intellectually with the definition of "warehouse," and it appears that the BZA was distracted in its analysis by the physical character of the facilities housing the goods to be distributed, thereby losing sight of the fact that the focus of the analysis is on the proposed use of the property, which was to receive, store, and distribute cement, which is clearly a "warehousing and distribution" facility by any commonly applied definition. "[A] a consistent construction of an ordinance by officials charged with its enforcement is given great weight. 'Nonetheless, if the administrative interpretation of a portion of the ordinance is so at odds with the plain language used in the ordinance as a whole, such interpretation is plainly wrong and must be reversed'." *Board of Zoning Appeals v. 852 L.L.C.*, 257 Va. 485, 489 (1999), *quoting with approval Cook v. Zoning Appeals*, 244 Va. 107, 111, 418 S.E.2d 879 (1992). In *Board of Supervisors v. Gaffney*, 244 Va. 545, 553, 422 S.E.2d 760 (1992), Justice Lacy in her dissent noted that there was always a danger inherent in zoning cases that zoning administrators under the guise of statutory

construction would deny a lawful, permitted use by labelling it as something which it was not:

> The majority's characterization of the above land use as a "nudist club" improperly focuses on whether the people participating in these activities are attired, rather than on the activities and facilities which themselves impact the land. This distinction is critical in the analysis of an "inclusive" ordinance, such as the one before us because, under the majority's view, a governmental entity can secure the exclusion of any land use simply by assigning it a label not found in the ordinance. Here, the majority's characterization of the land use as a "nudist club" bears no relationship to how the land itself is being used. Lacking such a nexus, this use classification is invalid. *See* 1A Edward H. Zeigler, Jr., *Rathkopf's The Law of Zoning and Planning,* § 2.03, at 2-29 (4th ed. 1992).

The BZA was plainly wrong in determining that Roanoke Cement's proposed use of Parcel 57A1 was not a by right permitted use within the Industrial District.

The BZA did not err and was not plainly wrong in deciding that Roanoke cannot construct a new access road in an adjoining agriculturally zoned parcel to serve its proposed use in the Industrial District. Industrial uses are not permitted in the agricultural zoning district. Roanoke proposes to haul cement and fly ash to and from the proposed terminal in the industrial district on a paved access road through the agricultural district and build a new access road in that agricultural district.

"Every landowner enjoys a right to have reasonable access to his land, and this is true whether his use is residential or commercial," and "the number of access drives available to a commercial property may be limited." 83 Am. Jur. 2d, *Zoning and Planning,* § 219. However, it is also true as further stated in 83 Am. Jur. 2d, *Zoning and Planning,* § 223, that:

> The use of land in a residential district as a means of ingress and egress to land or buildings in a commercial zone for commercial purposes constitutes a commercial use in violation of zoning restrictions which exclude commercial uses in residential districts. Thus, the use of property in a residential zone to gain vehicular access to business property is a commercial use, and an ordinance excluding commercial or industrial uses from a residential district excludes the

maintenance of driveways which provide ingress and egress for such uses.

The prohibition on using access roads for uses contrary to the designated use of the lands upon which they are constructed is discussed in *Gilbert's Corner Limited Partnership et al. v. Loudoun County Board of Zoning Appeals et al.*, 1990 W.L. 751280. In *Gilbert's Corner*, the Circuit Court of Loudoun County considered the use of an access road in an agricultural zoning district serving a commercial use in an adjacent commercial zoning district and stated at page 3 of the opinion (reported in 1990 W.L. 751280):

> The Court agrees with the Zoning Administrator that a placement of off site roadways ... in the A-3 portion of the property constituted a "use" of the properties within the contemplation of the Zoning Ordinance. While the record does not justify a finding that such uses, within the context of the instant site plan application, are "principal uses" within the contemplation of the zoning ordinance, they do constitute "accessory uses." Thus "to the extent such uses are accessory uses, the principal use to which they are subordinate must be a permissible use."

The BZA partially applied the principle established in the *Gilbert's Corner* case. It did not allow construction of the new access road in the agricultural zone but allowed the use of the existing road in that zone. (BZA 6/2 Tr. 69-78; see the locations of the roads in L. O. Ex. 18.) The BZA followed and relied on the County Attorney's advice that the use of the existing road was somehow permitted or grandfathered because of prior use of the road for industrial purposes, but there was no evidence in the record of any previous heavy tractor trailer use of the existing road.

The BZA's reliance on a grandfathered use of the access road in the agricultural district, which was claimed but supported by no evidence, was plainly wrong. As noted, a private road in an agricultural district cannot generally be used to provide access to an industrial property. The record is insufficient to prove a grandfathered nonconforming use of the access road.

In deference to the constitutional prohibition against impairing vested property rights without compensation, Virginia Code § 15.1-492 assures a landowner's right to continue the "lawful use" of any land, buildings, and structures "existing on the effective date of the zoning restriction and continuing since that time in non-conformance to the ordinance." *Knowlton v. Browning-Ferris*, 220 Va. 571, 572, n. 1, 260 S.E.2d 232, 234, n. 1 (1979).

However, a "use accessory or incidental to a permitted use 'cannot be made the basis for a nonconforming principal use'." *Id.* at 575-76, 260 S.E.2d at 236. In a civil proceeding, the "land user has both the burden of initially producing evidence tending to prove a lawful nonconforming use and the burden of persuading the factfinder." *Id.* at 574, 260 S.E.2d at 235. Thus, "the risk of non-persuasion ... rests with the land user claiming the right to continue a nonconforming use." *Id.* at 575, 260 S.E.2d at 236.

In *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 47, 353 S.E.2d 727 (1987), adjoining landowners successfully challenged the use of land in a residential district as a parking lot for an adjoining hotel complex, and the Supreme Court discussed the burden of proof procedure in land use cases:

> In a civil action in which a use is challenged as illegal, the challenging party has the initial burden of producing evidence to show the uses permitted in the zoning district in which the land is located and that the use of the land is not a permitted use. Upon this showing, the burden shifts to the landowner to show that his use is a lawful nonconforming use. *Knowlton v. Browning-Ferris*, 220 Va. 571, 574, 260 S.E.2d 232, 235 (1979). The evidence is clear that the current zoning of lot 15 is residential and that accessory commercial parking is not a permitted use in a residential district. Thus, the burden fell upon Neptune to establish that its nonconforming use of the lot is lawful. To meet this burden, Neptune had to prove that its use began before the residential zoning restriction applied. This it failed to do.

"Nonconforming uses are not favored in the law because they detract from the effectiveness of a comprehensive zoning plan." *City of Chesapeake v. Gardner Enterprises*, 253 Va. 243, 248, 482 S.E.2d 812 (1997). Accordingly, if the use is discontinued for more than two years, it is no longer permitted, and if the nonconforming use is changed to a more limited use, the right to the earlier more expansive use is lost. *See Donovan v. Board of Zoning Appeals*, 251 Va. 271, 275, 467 S.E.2d 808 (1996) (local ordinance so stated).

A use incidental to a lawful nonconforming use cannot over time increase into a principal use of a property. *Knowlton v. Browning-Ferris Industries of Va.*, 220 Va. 571, 575-76, 260 S.E.2d 232 (1979). In *Board of Zoning Appeals v. McCalley*, 225 Va. 196, 300 S.E.2d 790 (1983) (decided on discontinuance of use), the Supreme Court noted that property which was grandfathered as a nonconforming use as an automobile repair facility could be used as a metal fabrication facility. In the case under consideration,

"distribution" of cement is the primary proposed use of the property, it is not an accessory or incidental use.

In any nonconforming use case, once it has been determined that the use in question is not a permitted use, the burden then shifts to the landowner to first show the character of his nonconforming use in existence at the time when the zoning restriction was imposed upon his property and then to show that his use of the property has not substantially changed. The first or grandfathered use is the baseline which must first be established so that the character of the current use in question may be compared to the historical, grandfathered use. This principle was recognized by the Supreme Court in *Knowlton v. Browning-Ferris*, 220 Va. 571, 576, 260 S.E.2d 232 (1979), where the Supreme Court stated that:

> Recognizing that a nonconforming use need not remain static, we consider whether the character of the nonconforming use in existence when the zoning restriction was imposed has been continued or changed.

In this case, Roanoke Cement failed to produce any evidence to show the nature and extent of the "then existing use" of the access road by the owner at the time that the agricultural restrictions were promulgated. In 83 Am. Jur. 2d, *Zoning and Planning*, § 666, the editors state:

> Sometimes the attempted expansion of a nonconforming use takes the form of (1) a change in a previously established nonconforming accessory or incidental use of the premises, or (2) an assertion that a particular use should be treated as accessory to a previously established nonconforming principle use. However, the Courts are generally not sympathetic toward property owners who employ these means of expanding a nonconforming use. Thus, the right to maintain a horse as a nonconforming accessory use of a residence does not include the right to expand the accessory use to a commercial horse farm.

However, where "extraordinary or exceptional" circumstances exist, a variance may be granted to provide access to property across property whose zoning does not otherwise permit the use. *See* Virginia Code § 15.2-2309; and *Azalea Corp. v. City of Richmond*, 201 Va. 636, 112 S.E.2d 862 (1960) (access through residential district to commercial property ordered where it was not feasible for the owner to construct residences on his property).

No evidence was presented to the Board of Zoning Appeals on the issue of the nonconforming use of the access road through the agricultural district and the nature of any alleged grandfathered use. Therefore, there is no evidence supporting the BZA decision on the nonconforming use of the existing access road, so the BZA decision with respect to the access road is plainly wrong.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The BZA's decision that the Landowners' appeal was timely filed is affirmed.

2. The BZA's decision that the Deputy Zoning Administrator has the authority to make initial, by right property use decisions incident to performing the functions of his office is affirmed.

3. The proposed warehousing and distribution use by Roanoke Cement of Parcel 57A1 is a by-right use in the Industrial District, and the BZA decision to the contrary is reversed.

4. The BZA decision that a new access road to support an industrial use cannot be constructed in the Agricultural District is affirmed.

5. This case is remanded to the BZA for the purpose of determining whether Roanoke Cement has a grandfathered right to use the access road for the purposes of using trucks to pass over the access road distributing its cement.